(107 N. W. 53.)

---

CHARLES O. SMITH AND W. W. SMITH, CO-PARTNERS AS THE NORTH DAKOTA HARNESS COMPANY, v. THE GREAT NORTHERN RAILWAY COMPANY.

Opinion filed February 20, 1906.

**Common Carriers — Binding Effect of Classification Sheets — Interstate Commerce Commission.**

1. Common carriers of freight, having adopted classification sheets fixing transportation charges, and having filed the same with the Interstate Commerce Commission, are, as well as the shippers, bound thereby; and contracts between such carriers and shippers are presumed to be governed by the classification sheet in force at the date of shipment.

**Same — Construction — Local Usage and Customs.**

2. In construing such classification sheets, the intention of the framers thereof as to the meaning of words used, when such intention can be ascertained, should be given effect regardless of the intention of the shipper, or of local usages and customs relating to the meaning of terms contained therein.

Appeal from District Court, Cass county; *Pollock, J.*

Action by Charles O. Smith and Walter W. Smith, doing business as the North Dakota Harness Company, against the Great Northern Railway Company. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Morrill & Fowler,* for appellant.
*Murphy & Duggan,* for respondent.

FISK, District Judge. This appeal is from a judgment of the district court of Cass county in favor of the defendant railway company, adjudging that it is entitled to the possession of certain personal property consisting of 76 bales of burlap horse covers, or, in the event the delivery of the possession thereof cannot be had, then that defendant have judgment against plaintiff for the value of its special property therein under its lien as a common carrier, together with its costs and disbursements. The plaintiff is a consignee of said goods which were transported from Philadelphia, Pa., to Fargo, in this state, over the lines of the Great Northern Railway company and connecting lines. The goods were billed by the common carriers as first-class freight, and it being the contention of plaintiff that the same should be transported as third-class freight, they tendered a sum sufficient to cover the latter charges and demanded possession of the property. The tender and demand were refused, and this action was commenced to recover possession of said property. The action was tried to a jury, and at the close of the testimony the district court, on defendant's motion, directed a verdict in defendant's favor, and judgment was entered upon such verdict. This is the only error assigned, and the sole dispute between the parties is as to the proper classification, under the schedule of rates, of the goods in question for the purpose of transportation charges, the plaintiff contending that they should be charged for on the basis of third-class freight, while defendant company contends that they were properly billed as first-class freight.

If plaintiff's contention is sound, then the tender of the charges on the basis of third-class freight operated to discharge the lien of the common carrier and plaintiff would be entitled to recover the possession of the property, or its value; but on the contrary, if defendant is correct in its contention, then it is entitled to hold the property under its lien until the proper freight charges are paid or tendered. The controversy, therefore, turns upon the question as to the proper classification of the shipment in question according to the schedule of freight rates in force at the date of shipment, which was in 1903; and there being no conflict in the evidence as to the nature of the goods shipped or as to any question of fact, the controversy is one of law, and involves a proper construction

of the rate schedule or classification sheet in force at the date of such shipment. What the schedule or sheet may have provided for at any other date, either prior or subsequent, is wholly immaterial, and, therefore, certain testimony which plaintiff was permitted to introduce over defendant's objection relative to the classification of similar shipments under other schedules or at other times should have been excluded. The evidence shows beyond dispute that the shipment consisted of burlap manufactured into covers for horses. Under the rate classification sheet in force when this shipment was made, these goods were not specifically mentioned, but there was a general classification therein under the heading "Blankets," and goods included under this general classification were rated as first-class freight and billed as such by the common carrier.

It appears in evidence that the various transportation companies, from time to time, through their representatives, meet and adopt classification sheets in which the different kinds of merchandise are classified and the rate of transporting same is fixed. These classification sheets, when agreed upon, are filed with the Interstate Commerce Commission pursuant to the provisions of the interstate commerce law, and thereafter and while in force no transportation company has any right to deviate therefrom. See Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379, 1 Supp. Rev. St. 529 [U. S. Comp St. 1901, p. 3154]; also Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]. All contracts entered into with common carriers are presumed to be governed by the classication sheet in force at the time of the shipment. Whether such classification is just or unjust it is, nevertheless, binding, both upon the common carrier and the shipper, so long as the same remains in force. The tariff thus fixed must govern regardless of any contract for a greater or less rate. Ward v. Railway Co. (Mo. Sup.) 58 S. W. 28; Raleigh, etc. v. Swanson (Ga.) 28 S. E. 601, 39 L. R. A. 275; Gerber v. Company, 63 Mo. App. 145; Railway Co. v. Lumber Co., 1 Tex. Civ. App. 533, 21 S. W. 290. The transportation companies having the sole right to fix such classification sheets, without any voice on the part of the shipper, it follows as a matter of law that in construing the same, the intention of the framers thereof, when such intention can be ascertained, should be given effect; and in arriving at such intention, the court should give no weight to the alleged intent of the shipper or to any local

custom or usages of trade as to the meaning of words or expressions contained in such classification sheets. Guided by this rule we are of the opinion that the shipment in question came clearly under the general classification heading of "Blankets." Such was the evident intent of the framers of the schedule as shown by the testimony, and this construction is supported by standard authority as to the definition of the word "Blanket." See Webster's International Dictionary. If we are correct in this conclusion, then it follows that said shipment was properly billed as first-class freight, and defendant is entitled to the possession of the goods under its lien as a common carrier until the proper freight charges are paid or tendered.

We therefore decide that the district court committed no error in directing a verdict in defendant's favor, and the judgment appealed from is affirmed. All concur.

ENGERUD, J., being disqualified, took no part in the foregoing decision; Judge C. J. Fisk, of the First judicial district, sitting in his place by request.