## WOODRICH et al. v. NORTHERN PAC. RY. CO.
No. 9860.

Circuit Court of Appeals, Eighth Circuit.
June 11, 1934.

Emanuel Sgutt, of Fargo, N. D., for appellants.

Conrad Olson, of St. Paul, Minn. (Conmy, Young & Conmy, of Fargo, N. D., and M. L. Countryman, Jr., and D. F. Lyons, both of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

Appellants, as plaintiffs below, brought this action at law to recover damages for the assessment and collection by defendant, a common carrier, of alleged unreasonable, extortionate, and discriminatory freight rates on various intrastate shipments of sand and gravel moving between certain points on defendant's railway in North Dakota.

After the impaneling of a jury, and before the taking of any testimony, defendant moved for a dismissal of the action upon the grounds that the complaint fails to state a cause of action, in that it contains no allegations that the rates were not fixed and published according to law, and no allegation that the rates assessed were in excess of the lawful published rates, and that the court is without jurisdiction to determine the question of past unreasonableness of the rates assessed; that question having been specifically delegated by law to the North Dakota Board of Railroad Commissioners. The court did not pass upon the motion at that time, but suggested that counsel stipulate the facts as far as possible, suggesting to counsel that, "When you get your evidence in, all legal questions involved can then be argued before the court at one time so that I can pass upon the whole matter."

The facts were then largely stipulated to the record in open court, and when the plaintiffs rested their case, the defendant renewed its previous motion, adding thereto a motion for a directed verdict on the ground that there was no evidence in the record to sustain the allegation that the rates assessed were unreasonable. There was also embodied in the motion a motion to dismiss, on the ground that proper parties in interest were not shown. The court then announced that:

"With reference to the motion to dismiss on the ground proper parties in interest are not shown, such motion is denied and exception allowed.

"All other motions to dismiss on the various grounds set out in the motions are granted and exception allowed to the plaintiff; and the case is now by the Court dismissed on its merits, with prejudice and costs to the defendant."

There was no verdict directed, but the court entered judgment discharging the jury, and dismissed the action on its merits. From this judgment plaintiffs have appealed, alleging error in granting defendant's motion to dismiss plaintiffs' action.

There is no allegation in the complaint, and it is not otherwise contended, that the rates assessed and collected were not those filed and published by the defendant as required by the North Dakota statutes. It is the claim of the plaintiffs that under the North Dakota laws, a common-law action may be maintained to recover damages because of the exaction of unreasonable and discriminatory rates, even though such rates be those named in the published tariffs of the carrier approved by the Railroad Commission. Absent statutory provisions on the subject of rate regulation, such action could doubtless be maintained. It is, therefore, important to examine the provisions of the North Dakota statutes (Comp. Laws 1913). Among these statutes may be noted the following: "Section 4726 (1913). When any such railroad, railroad corporation or common carrier shall have established and published its rates, fares and charges, in compliance with the provisions of this article, it shall be unlawful for it to charge, demand, collect or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any service in connection therewith than is specified in such published schedule of rates, fares and charges as may at the time be in force."

Any violation of this statute subjects the carrier to a fine of not less than $500, nor more than $5,000, for each offense.

Section 4711 (1913) and section 12 of chapter 192, Laws of 1919, make it the duty of carriers to charge only just and reasonable rates, while section 4724 (1913) makes it the duty of carriers to print and keep for public inspection schedules of the rates in force. Section 4725 (1913) requires carriers to post notice and print new schedules of changes, and section 4727 (1913) requires carriers to file such schedules with the Board of Railroad Commissioners. Unjust preferences and discriminations are prohibited by statutory provisions. Section 6 of chapter 188 of the Session Laws of 1917 not only empowers the Board of Railroad Commissioners, but directs it to make schedules of reasonable maximum rates of charges for all carriers doing business in North Dakota. Section 3 of chapter 192 of the Session Laws of 1919 authorizes the Board to change any intrastate rate which it finds, after hearing, to be unjust or unreasonable, and to prescribe just and reasonable rates. Section 4 of chapter 192, Session Laws of 1919, empowers the Board, after hearing, to enforce, originate, establish, modify, adjust, and promulgate rates, and requires the Board, upon a finding that any assessed rates are unreasonable or discriminatory, to fix reasonable rates, joint rates, tariffs, tolls, charges, or schedules to be followed in the future in lieu of those found unjust, unreasonable, or discriminatory. Section 14 of the same act provides that no change of rates in force at the time of the passage of the act may be made by any railroad except after thirty days' notice, and then only upon a showing. Section 30 of the same act provides that complaint may be made to the Board concerning any charge theretofore established in violation of the provisions of law or order or rule of the Board. By various other statutory provisions the Board is given power to rescind, alter, or amend any decision made by it, and in all collateral actions or proceedings, the orders and decisions of the Board which shall have become final are made conclusive.

It seems clear that the entire subject of intrastate freight rates in the state of North Dakota is under the exclusive control of the Board of Railroad Commissioners. The powers vested in the North Dakota Board of Railroad Commissioners are even broader and more sweeping than those conferred on the Interstate Commerce Commission. Manifestly, the main purpose of these regulatory statutes was to compel the establishment of uniform rates for all persons entitled to transport goods over the railroads, and to afford convenient facilities for ascertaining what are the established rates, and to prevent preferences and discriminations. By the very provisions of the statutes, the carriers are prohibited from collecting from any person a greater or less rate than is specified in the published schedule. The carrier in this case, having adopted, filed, and published schedules of rates applicable to the shipments involved, was bound to charge and collect that rate and no other. Dayton Coal, etc., Co. v. Cincinnati, etc., Ry. Co., 239 U. S. 446, 36 S. Ct. 137, 60 L. Ed. 375; Louisville, etc., R. Co. v. Maxwell, 237 U. S. 94, 35 S. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Boston, etc., R. Co. v. Hooker, 233 U. S. 97, 34 S. Ct.

526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; Smith v. Gt. Northern Ry. Co., 15 N. D. 195, 107 N. W. 56. The parties could not by contract or otherwise vary this rate. Missouri, etc., R. Co. v. Harriman, 227 U. S. 657, 33 S. Ct. 397, 57 L. Ed. 690.

As the carrier, shipper, and consignee are bound by the published schedules of rates, the court is likewise bound thereby in determining the rights and liabilities of the parties. Great Northern Ry. Co. v. O'Connor, 232 U. S. 508, 34 S. Ct. 380, 58 L. Ed. 703. To permit an individual shipper to raise the question of the reasonableness of such rates, in an action at law brought against the carrier to recover damages for alleged unreasonable and discriminatory rates, would result in discrimination and be violative of the very purpose of the statutes involved. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 355, 51 L. Ed. 553, 9 Ann. Cas. 1075. But it is said that the North Dakota statutes do not abrogate the common law remedy for the recovery of alleged unreasonable charges because of the following provision found therein: "Nothing in this act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions thereof are in addition to such remedies." (Laws N. D. 1917, c. 188, § 5.)

A similar provision is contained in the Interstate Commerce Act (49 USCA § 22) and was considered by the Supreme Court in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., supra. In the course of the opinion in that case, which discusses the right of a shipper to maintain an action such as the one here involved, the court said: "For if, without previous action by the Commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that, unless all courts reached an identical conclusion, a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question. * * * This clause (preserving the common law remedy), however, cannot in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself."

But there would seem to be a further reason why plaintiff cannot recover in this action. Even under plaintiffs' own theory, recovery could not be had unless the rates as charged and collected were unreasonable and excessive. It has been observed that the North Dakota statutes confer upon the Commission the legislative function of making, allowing, approving, revoking, and modifying rates. The Board is by positive statute directed to make rates. By order of the Commission, dated January 5, 1922, all intrastate rates then filed were continued in full force and effect until revoked, modified, or suspended by appropriate proceedings. The rates here involved were thereby approved by the Board, and having in effect been prescribed by the Board, and the rates charged having been assessed and collected in compliance with the schedules so approved and fixed by the Board, no award of damages could properly be made. Arizona Wholesale Grocery Co. v. Southern Pacific Co. (C. C. A. 9) 68 F.(2d) 601; Atchison, T. & S. F. Ry. Co. v. Arizona Grocery Co. (C. C. A. 9) 49 F.(2d) 563; Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co., 284 U. S. 370, 52 S. Ct. 183, 186, 76 L. Ed. 348.

In the last-cited case, the Supreme Court held that when the Interstate Commerce Commission had approved or prescribed certain rates, it could not thereafter award reparations with respect to shipments that had moved under such rates. In the course of the opinion in that case it is said: "As respects its future conduct, the carrier is entitled to rely upon the declaration as to what will be a lawful, that is, a reasonable, rate; and, if the order merely sets limits, it is entitled to protection if it fixes a rate which falls within them. Where, as in this case, the Commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi judicial capacity, ignore its own pronouncement promulgated in its quasi legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed."

The rates here have been assessed and collected in accordance with rates approved, if not positively fixed by the North Dakota Board. If plaintiffs considered the rates unreasonable or discriminatory, it would seem that their remedy was to apply to the Commission for a modification of the rate established or for the fixing of a reasonable maximum rate. Doney v. Northern Pacific Ry. Co., 60 Mont. 209, 199 P. 432; Montana Horse Products Co. v. Gt. Northern Ry. Co., 91 Mont. 194, 7 P.(2d) 919; Mathieson Alkali Works v. Norfolk & W. Ry. Co., 147 Va. 426, 137 S. E. 608; Missouri-Kansas & T. R.

**736**

Co. v. Railroad Commission of Texas (Tex. Civ. App.) 3 S.W.(2d) 489; Northern Pacific Ry. Co. v. Dept. of Public Works, 136 Wash. 389, 240 P. 362.

■ These rates, having been fixed and approved by the Commission, are binding upon all the parties so long as they remain unmodified, and no cause of action can be predicated upon their enforcement. Plaintiffs' complaint therefore not only fails to state facts sufficient to constitute a cause of action, but it states facts showing that no cause of action in fact exists.

The judgment appealed from is affirmed.