436

## WATAB PAPER CO. v. NORTHERN PAC. RY. CO.

No. 13133.

Circuit Court of Appeals, Eighth Circuit.

Feb. 27, 1946.

Maurice S. Bush, of Minneapolis, Minn., for appellant.

Conrad Olson, of St. Paul, Minn. (M. L. Countryman and L. B. DaPonte, both of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This was an action at law brought by appellant as plaintiff to recover $55,000 for alleged excessive freight rates charged and collected by appellee, Northern Pacific Railway Company, between November 10, 1936, and October 23, 1941, on shipments of pulpwood transported from points in the northern part of the State of Minnesota on the Minnesota and International Railway Company, referred to in the record as the M. & I., the Big Fork and International Falls Railway Company, referred to as the B. F. & I. F., and the Northern Pacific Railway Company, and delivered to appellant at its paper plant at Sartell, Minnesota. The parties will be referred to as they were designated in the trial court.

Plaintiff is a Delaware corporation, engaged in the manufacture of paper from pulpwood at Sartell, a small town located a short distance north of the City of St. Cloud, in central Minnesota. Defendant is a Wisconsin corporation and is a common carrier owning and operating railway lines in Minnesota and other states. Without attempting geographical accuracy, it is sufficient for the purposes of this opinion to say that defendant's lines extend north from the Twin Cities, through the town of Sartell, to Brainerd, Minnesota. From Brainerd, Minnesota, the M. & I. line extends northerly to Grand Falls, Minnesota, whence the B. F. & I. F. line extends to International Falls, Minnesota. Defendant and its connections assessed and collected joint line rates published in tariffs filed with the Minnesota Railroad and Warehouse Commission, and it is the contention of plaintiff that defendant and its named connections were in fact one railroad and that a single line rate was therefore applicable and that plaintiff is entitled to recover by way of damages the difference between single line rates and the rate charged and collected under the joint line tariff.

It was the contention of the defendant in the trial court, and it renews the contention here: (1) That plaintiff failed to establish unity of control and operation between defendant and the Minnesota and International Railway Company; and (2) that the Minnesota Railroad and Warehouse Commission, after conducting hearings pursuant to Chapter 344 of the Laws of 1913, determined in its administrative capacity that defendant and Minnesota and International were separate railroads and required them by its order to establish joint rates in accordance with certain rules therein set forth; that the named carriers complied with that order and subsequent orders and duly filed and published tariffs as required by law and the orders of the Commission and that the rates charged and collected were the only rates applicable and that in the absence of an order by the Commission the court was without power to substitute its judgment for that of the Commission.

Plaintiff's contention that defendant and the M. & I. were one road for rate-making purposes is bottomed on substantially the following state of facts: Defendant owned 70 per cent of the outstanding capital stock of the M. & I.; five out of seven of the directors of the M. & I. were chosen by defendant; the two corporations had common officers; the traffic, accounting, purchasing, legal and claim departments of the two companies were the same. The M. & I. was heavily indebted to defendant for operating expenses, and defendant held a mortgage on all the property of the M. & I., which mortgage was foreclosed in October, 1941, since which date, however, defendant has operated the M. & I. as a branch line and has applied the single line rates. On the other hand, there was also evidence that the defendant and the M. & I. kept separate books; that they had separate maintenance forces, station employees and operating crews; that the M. & I. made its own purchases, made its own reports to other carriers for interline traffic, and collected balances owing to it, paid defendant for joint use of the station at Brainerd; for heavy repairs, and for rolling stock under the per diem rules of the Association of American Railroads; that separate contracts were entered into with the United States Railroad Administration during the period of Federal control, and with the Railroad Brotherhoods; that separate reports were made to the Interstate Commerce Commission and the Minnesota Railroad and Warehouse Commission and the federal and state taxing authorities; that the M. & I. owned its own locomotives, pulpwood cars and box cars; that it charged defendant for the carrying of its materials and private cars; that passes on

438

one road were not honored by the other, and that at all times the minority interests in the M. & I. evinced a strong and active interest in its affairs as evidenced, among other things, by the case of Backus-Brooks Co. v. Northern Pac. Ry. Co., 8 Cir., 21 F.2d 4, brought by minority stockholders of that company.

The trial court sustained defendant's second contention and in doing so expressed the view that as the Commission had, pursuant to law, after hearing approved the joint rate reflected by defendant's tariffs, the court could not in this collateral proceeding review or re-determine the decision of the Commission in effect holding that defendant and the M. & I. were separate railroads entitled to file a joint line tariff and to collect the charges shown by such filed tariffs. The court considered the evidence produced going to the question as to whether or not the defendant had such control or ownership over its connecting lines as to make the lines for rate-making purposes a single line, for the purpose of determining whether or not there was before the Commission evidence sufficient to invoke the Commission's jurisdiction to hear and determine this question. Manifestly, if the Commission had such jurisdiction, it had jurisdiction to reach either a correct or an incorrect decision, but whether correct or incorrect its determination could not be attacked collaterally as in this proceeding attempted. The power to regulate and establish freight rates is a legislative power which the Minnesota Commission alone may exercise. It had jurisdiction of the subject matter and of the parties. St. Paul Book & S. Co. v. St. Paul Gaslight Co., 130 Minn. 71, 153 N.W. 262, Ann.Cas.1916B, 286, L.R.A. 1918A, 384; Minnesota Rate Cases, (Simpson v. Shepard) 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18; Backus-Brooks Co. v. Northern Pac. Ry. Co., supra; Great Northern Ry. Co. v. Merchants Elev. Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; Woodrich v. Northern Pac. Ry. Co., 8 Cir., 71 F.2d 732, 97 A.L.R. 401.

It stands without dispute, and the court found, that the defendant and its connecting carriers had filed and published tariffs containing schedules of rates applicable to the shipments involved. Having done so, defendant was required to charge and collect the rate so designated in the tariff and no other, and the shipper, the plaintiff, was bound by the published schedules of rates if in fact they were filed and adopted with the approval of the Commission. The published tariffs could not be avoided nor varied by contract or otherwise, and the rates in effect at the time of the shipment even though unjust or unreasonable must prevail unless and until changed in the manner provided by law. Thus, Section 2015, Minn.R.L.1905, provides that no carrier "shall charge, demand, collect, or receive for any service a greater or less sum than that fixed in its published schedules."

The argument that the Minnesota statute preserved the common law remedy for the recovery of unreasonable charges because of a reservation in the Minnesota statute is answered, we think, by the Supreme Court in Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 355, 51 L.Ed. 553, 9 Ann.Cas. 1075, where, in discussing the right of a shipper to maintain a common law action for damages for alleged unreasonable freight charges, it is said:

"For if, without previous action by the Commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that, unless all courts reached an identical conclusion, a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question. * * *

"This clause (preserving the common law remedy) however, cannot in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself."

See, also, Woodrich v. Northern Pac. Ry. Co., supra.

It is worthy of note too that according to the common law, if excess charges of freight are paid to a railroad company for a long course of years voluntarily and without objection, protest or notice of discontent, they can not be recovered. There is no suggestion in this record that plaintiff was under duress or compelled as a condition precedent to the acceptance of its product for shipment to pay the alleged

excessive rate. Murphy v. New York Central R. Co., 225 N.Y. 548, 122 N.E. 700; Killmer v. New York C. & H. R. Co., 100 N.Y. 395, 3 N.E. 293, 53 Am.Rep. 194.

But it is urged that the trial court was not warranted in finding that the Commissioner in fact acted in such a manner as to support the conclusion that it approved or found that defendant and its connecting carriers were entitled to file the tariff fixing the joint rate and that the order entered by the Commission did not authorize the filing of such a tariff. It is therefore necessary to examine the record in this respect.

By Chapter 176, Minnesota Laws of 1905, the Commission was vested with jurisdiction over freight rates and classifications. Section 1, Chapter 90, Minnesota laws of 1913, provided that freight rates on intrastate shipments should be based on distance and the charges for services should not be discriminatory. Section 6 of the same act provided that the Commission as far as practicable should make for each railroad corporation doing business in the state "a schedule of reasonable maximum rates or charges for the transportation of freight and cars on each of said railroads and said power to make schedules shall include the classification of such rates * * *." Schedules and classifications made pursuant to the provisions of this act were declared to be "prima facie evidence that the rates therein fixed are reasonable and just maximum rates of charges." Following the enactment of this law the Commission initiated an investigation entitled, "In the matter of maximum class and commodity rates made pursuant to the provisions of Chapter 90 of the General Laws of 1913." Notice was directed to certain named railroads operating in Minnesota, among which were the Northern Pacific and the M. & I. The B. F. & I. F. was omitted because it apparently was not an independently operated railroad. Hearing was had and testimony taken, and on December 10, 1913, the Commission entered an order finding that the railroads named were class A railroads operating in Minnesota, and requiring that each named company publish and put into effect a scale of reasonable class and commodity rates as shown in Exhibit A attached, by the first day of January, 1914, and to apply such rates to the movements of intrastate shipments of freight in Minne-

sota. Following the entry of this single line rate order, the M. & I. published a tariff containing rates applicable between stations on its lines and between stations on its lines and the B. F. & I. F., and the defendant, Northern Pacific Railway, published a tariff of local rates on its lines.

Chapter 344, Laws of 1913, provided that the Commission should make and publish a schedule of joint through railway rates for traffic over two or more lines of railroad and on such routes as in its judgment the fair and reasonable conduct of business required. On January 7, 1914, the Commission issued a notice of hearing addressed to twenty-six common carriers operating in Minnesota including the defendant, Northern Pacific Railway, and the M. & I. The Commission took testimony, and on July 27, 1914, entered an order entitled, "In the matter of general rules fixing the percentage relation to govern in making joint rates between common carriers for the transportation of intrastate shipments of freight in carload and less than carload lots." This order is known in the record as the joint line rate order. It is noted that certain carriers, not including defendant or the M. & I., were excepted from the operation of the order, but all others, including defendant and the M. & I., were required to "establish joint rates in accordance with these rules to apply through all points of connection within the State of Minnesota, to take effect Monday, the tenth day of August, 1914. This may be done by naming the rates or providing specific rules to govern in making them." Of the rules promulgated by the Commission the following may be noted:

Rule 11(A) provided that:

"The class and commodity schedules herein mentioned are those which were prescribed by the Commission in Exhibit 'A' attached to the order fixing maximum rates dated December 10th, 1913."

Rule 11(B) provided that:

"Joint through rates * * * for commodity schedules * * * shall be made up on the basis of 85 per cent of the sum of the local rates and shall apply through all junction points within the state."

Pursuant to this order of the Commission, defendant and the M. & I. filed tariffs with the Commission. Following the filing of these tariffs the Commission from time to time permitted an occasional revision, both upward and downward, of the filed

joint rates on pulpwood moving from points north of Brainerd to Sartell, Minnesota. Notice of the hearing before the Commission relative to the fixing of joint rates contained a recital stating when and where the hearing would be held "at which time all railroad companies, persons, partnerships and corporations who are interested in the subject may present themselves and be heard." During this hearing, which apparently was prolonged and continued from time to time, a Mr. L. A. Page, Jr., appeared and testified as a witness as to the effect on his business of joint rates over the defendant and the M. & I. This witness among other things testified as follows:

"Our position is a little peculiar, and we have a dual trouble. We have a yard at Minnesota Transfer at which we concentrate a large portion of our cedar, and which is vitally affected by this ruling, owing to the fact we are on a combination of the joint rate in, as well as suffering a joint rate into the southern part of Minnesota. Taking up the particular facts in regard to the Minnesota Transfer first, say for instance the rate from Gemmell, Minnesota, in to the Minnesota Transfer, under this proposed arrangement of 85% on the lumber basis, which incorporates part of our products, brings the rate to 13.8 cents, while the present rate is 10 cents on local business. Our stuff originates on the M. & I.; our business depends on whether the M. & I. is a distinct road, or whether it is a continuous mileage with the N. P. If that is not a continuous mileage, it will wipe our yard out at Minnesota Transfer. We can not stand the increase. I don't know what position the Commission is going to take with regard to that."

"Mr. Mills (Chairman of the Commission): We have been advised by the Attorney General those are separate railroads."

Witness continued:

"If that is so we see our finish. That is our position in regard to the Minnesota Transfer. * * * We have established a yard there and will have to meet an increase of 5 cents per cwt. on account of the combination in over the M. & I. and N. P. where we have our principal line of business, our stumpage, and all of our producing points are on the M. & I., and by the joint rate on the mileage of both roads, which brings us up too high to do business. On a continuous mileage we would not be at such a great disadvantage, only a cent more, which we could absorb."

Another shipper, a Mr. T. M. Partridge, appeared as a witness, representing a lumber company in Minneapolis. He too protested against the establishment of a joint rate over the two lines. As before noted, however, the hearings culminated in the joint line rate order of July 27, 1914, which was addressed to twenty-six different railways, including defendant and the M. & I., ordering the named carriers to make joint through rates. Rule III excepted certain carriers from the scope of the order, notably, the Chicago, St. Paul, Minneapolis & Omaha and the Chicago and North Western, as to which on certain commodities the Commission permitted an arbitrary increase of one cent over the single line rates. On appeal from this order by a shipper, the Commission was reversed as to this point, the holding being that because of joint operation and control of the Chicago, St. Paul, Minneapolis and Omaha and the Chicago and North Western, the single line rate was applicable. State v. Chicago & N. W. R. Co., 133 Minn. 413, 158 N.W. 627. Certain exceptions were also made in the case of Chicago and Great Western Railroad, and class "B" and "C" railroads.

On September 1, 1916, the Commission on its own motion issued an order to show cause directed to the defendant and the M. & I. and the B. F. & I. F., requiring them to show cause "why they should not file tariffs making rates to and from all points on the lines of said companies on a continuous mileage basis according to the rates promulgated by the Commission effective January 1st, 1914." While there were hearings on this order, no action has ever been taken, and its importance seems to be that it recognizes the effectiveness of the joint rate tariffs then on file pursuant to order of the Commission. These tariffs, naming the joint rates assessed on plaintiff's shipments, remained in effect with the full knowledge of the Commission and all interested shippers. The plaintiff voluntarily and without protest paid the freight charges in accordance with these tariffs and the Commission continued to treat defendant and the M. & I. as separate railroads for rate-making purposes during a period of more than twenty-five years. As has been observed, the contentions urged by plaintiff were urged before the Commission

in the 1914 hearings by shippers interested in shipments from points on the M. & I. to points on the Northern Pacific. As a matter of fact, the defendant and the M. & I. were separate corporations, each operating a railroad. They were apparently treated as separate roads for all other purposes, both at the time of the hearings before the Commission and since. They were not exempted from the order, and although the Minnesota statute contains provision that "any party to a proceeding before the Commission, or any party aggrieved by any order thereof, or the State of Minnesota by the Attorney General, may appeal," or the Commission may on its own initiative commence a proceeding in the District Court of Minnesota to compel compliance with its orders, the Commission commenced no such proceeding, nor was there any appeal as to the defendant and the M. & I., and as stated by the trial court:

"In the absence of an order by the Commission its previous position remained unchanged and everyone proceeded on that assumption for over twenty-five years. The very fact that these hearings took place is highly persuasive, it seems to me, on the point that the Commission had previously determined that the joint rate order applied."

■ The joint rate tariffs here in question were promulgated, filed and approved in the same manner as every other joint rate tariff in Minnesota; in fact, all the joint rate tariffs filed with the Commission by common carriers in Minnesota were apparently filed pursuant to this same order. On direct attack by an appeal taken by a shipper from that part of the joint rate order of July, 1914, which treated the Omaha and the North Western as separate lines for rate-making purposes, the court reversed. State by Hall v. Chicago & N. W. R. Co. 133 Minn. 413, 158 N.W. 627. Plaintiff relies largely on the authority of this case and on State ex rel. Smith v. Chicago M. & St. P. R. Co., 139 Minn. 55, 165 N.W. 869, and Minneapolis C. & C. Ass'n v. Chicago M. & St. P. R. Co., 134 Minn. 169, 158 N.W. 817. In each of these cases, however, statutory proceedings for a review of the action of the Commission were followed and there was a direct attack on the order of the Commission. They are not authority that such an order is subject to collateral attack. We think it

clear from the record that the Commission determined that the joint rate order applied to defendant and the M. & I., and having so determined by its order, that determination can only be attacked in the manner provided by the Minnesota statute, and so long as it remains is conclusive on all courts.

The finding of the court to the effect that the B. F. & I. F. was operated by the M. & I. is challenged, but since the defendant and the B. F. & I. F. were separated by the lines of the M. & I., Chapter 344, Laws of 1913, would be applicable, and hence the finding with reference to the operation and control of the B. F. & I. F. is not material.

■ It is finally contended that if the District Court did not have jurisdiction over the matter of rates, the action should have been remanded to the State Court from which it was removed. The court was without jurisdiction in this action to review or consider the question of the reasonableness of the freight rates charged, or to review the order of the Commission determining the right of defendant and the M. & I. to file a tariff of joint rates. It was not, however, without jurisdiction of the issues which it in fact tried. It had as much jurisdiction to consider these questions as did the State Court. The amount involved was in excess of the statutory jurisdictional amount; there was diversity of citizenship between the parties, and the court had jurisdiction, but upon the evidence submitted it had not the power to review, and did not review the rates that had been fixed by the order of the Commission.

■ Before the final findings of fact were filed, plaintiff commenced a proceeding before the Commission to determine the question whether defendant and the M. & I. were one or separate railroads for rate-making purposes for the period covered in the complaint. It then filed a motion asking the trial court to stay its hand pending the Commission's determination of the issue of joint control, which motion the court denied. In support of this procedure, plaintiff cites General American Tank Car Corporation v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 465, 84 L.Ed. 1035. The motion, however, was properly denied in the instant case because the tariffs filed established the right to collect joint rates and governed the rights of the parties in this action. This action

did not involve an administrative problem. The Commission had in fact acted, and it is that determination of the Commission which precludes plaintiff from recovering in this action.

We have considered all the other contentions so ably urged by counsel for appellant but find them without merit. The judgment appealed from is affirmed.