**GREAT NORTHERN RAILWAY COMPANY, Plaintiff,**

v.

**COMMODITY CREDIT CORPORATION, Defendant.**

**Civ. No. 3002.**

United States District Court
D. Minnesota,
Third Division.

June 30, 1958.

Edwin C. Matthias, Anthony Kane, R. W. Cronon, and Curtis H. Berg, St. Paul, Minn., for plaintiff.

George E. MacKinnon, U. S. Atty., Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff brought this action to recover $597.56, alleged to be a freight undercharge owing for the transportation of seven carloads of wheat during the period of April 14, 1955, to October 29, 1955. Jurisdiction is based on 15 U.S.C.A. § 714b (c).

■ The case came on for hearing on defendant's motion for summary judgment. A motion for summary judgment is an extreme remedy, and should be granted only in the absence of a genuine material fact issue. The burden is upon movant, and all doubts must be resolved against the moving party.[1]

Review of the pleadings, answers to interrogatories, exhibits and an affidavit on file, reveals that plaintiff received the cars at Roseau, Fosston and Hendrum, in northwestern Minnesota, consigned and billed by defendant to itself at Minneapolis, Minnesota, for inspection at that place. Each car was sampled at St. Cloud enroute to Minneapolis. Upon arrival at Minneapolis each car was inspected (for which service defendant paid $3.75 per car) and, at times ranging from one day to four days after arrival and inspection, each car was reconsigned to defendant at Duluth, Minnesota, where delivery was ultimately made. The transportation was entirely over the track of the plaintiff. It further appears that had the shipments been made directly from points of origin to Duluth, the transportation would also have been over plaintiff's track. The circuity involved in the transportation as it was accomplished as against transportation over the direct routes ranged from 34 to 104%.

All plaintiff's lines to Duluth traverse a portion of Wisconsin, and the parties are in agreement that the transportation was interstate in character. They also agree that the governing tariff is W.T. L. No. 417–D, C. J. Hennings, Alternate Agent (Minn.R.C. No. 412; I.C.C. No. A–3990). W.T.L. No. 417–D is a "distance scales" tariff, designed "for the purpose of applying via designated Interstate routes, the rates applicable between the same points in Minnesota on Intrastate traffic", that is, to allow carriers whose routes are interstate, to

1. Warner v. First National Bank of Minneapolis, 8 Cir., 236 F.2d 853, 857.

meet competition from carriers whose routes are intrastate. As stated, the rates are computed on distance, but under Item 95, the distance used is not the distance of actual movement, but rather the shortest distance the car could have moved wholly intrastate from origin to destination, using lines of not more than three carriers with connecting tracks for the transfer of carload freight.[2] Under Item 100, the same rate is applied to an interstate movement if the origin and destination of the car is within the State of Minnesota, and the movement is over a designated route.[3] Item 95 provides a second method of determining the applicable distance, and that is, if the shipment is accorded "transit privileges", the distance used is not the shortest distance between origin and destination, but the shortest distance between origin and destination via the point at which the transit privileges were accorded.[4]

Plaintiff submitted a statement of charges computed on the short intrastate distance, which the defendant paid. Thereafter, plaintiff submitted and defendant refused to pay, a statement of charges based on the short intrastate distance origin to destination via Minneapolis where the cars were reconsigned.

▇ Plaintiff contends and defendant denies that the diversion or reconsignment of the cars was a transit privilege. Plaintiff further contends, in the alternative, and defendant disputes, that no route exists from the points of origin to destination via Minneapolis, with the result that the short intrastate distance must be applied on routes which do exist from points of origin to Minneapolis, and from Minneapolis to Duluth.

Involved in both issues is the construction of the tariff, and upon cursory study these issues appear amenable to disposition by summary judgment. However, closer scrutiny reveals that the present state of the record will not permit use of this procedure. The inadequacy exists with reference to the second issue raised by the plaintiff. Item 100, making applicable to interstate shipments the short intrastate distance formula, limits its applicability to routes enumerated in Items 1100 to 1440. These Items constitute the "Routing Instructions." Prefatory to these Items is found the following language:

"Except as otherwise provided, shipments from, to or via points on the GN [Great Northern] will, while in the possession of the GN, be subject, to routing instructions as published in GN G.F.O. No. 3000–A, I.C.C. No. A–6842.

"Exception-Shipments may also be routed via other lines of the GN through reconsigning or transit points to the extent authorized in tariffs lawfully on file with the Interstate Commerce Commission, subject to conditions and additional charges, if any, provided therein.

"* * * * *"

2. Item 95:

"* * * * *

"In the application of the distance scales of rates named in this tariff, the distances shall be determined by use of the short Intrastate distance using not more than three lines, such distances to be figured via junction points where there are track connections for the transfer of carload freight without transfer of the lading (either direct or through intermediate switching road) using distances shown in the Distance Tables listed in Item No. 165. Rates thus ascertained will apply via all Intrastate routes composed of not more than three lines.

"* * * * *"

3. Item 100:

"Rates published herein for single and joint line application on Minnesota Intrastate traffic as provided in Item 95 will also apply on interstate traffic having origin and destination in the State of Minnesota and only when moving via Interstate routes as shown in Items 1100 to 1440, inclusive. * * *"

4. Item 95:

"* * * * *

"On shipments accorded transit privileges as authorized in tariffs of the lines parties hereto, distances shall be computed via the transit station origin to destination.

"* * * * *"

Thereafter follows Item 1290, the routing instruction between stations in Minnesota on the Great Northern, stipulating "270 (Duluth)" and stations in Minnesota on the Great Northern, stipulating "All stations."

Plaintiff contends that these tariff provisions require resort to its tariff G.F.O. 3000–A to determine the routes to which, by Item 100, Item 95 applies.

Defendant directs attention to the clause "Except as otherwise provided" in the prefatory statement, and contends that Item 1290 is such other provision. If this construction is correct, shipments to or from Duluth originating or terminating at any station in Minnesota on the Great Northern, no matter what course of movement between origin and destination the shipper directs, constitutes an interstate route to which the short intrastate distance formula must be applied.

If defendant's construction is correct, the fact that the shipper selects a course of movement which is unreasonable as involving circuity, back haul, or provides a service which the carrier had not intended to render at the rate set out, would be immaterial, since the carrier has in the tariff accepted as a route to which the short intrastate distance must be applied any possible course of shipment from stations on the Great Northern in Minnesota to Duluth.

It cannot be overlooked, however, that the short intrastate distance formula may be applied only on those interstate routes set out in the routing instructions, Items 1100 to 1440. Under defendant's construction, Items 1100 to 1440 are excluded from the routing restriction which otherwise would restrict application of Item 95 to those routes recognized by plaintiff's tariff G.F.O. 3000–A, and the routing restriction becomes meaningless.

██ In construing a tariff, the court must, so far as possible, give effect to all its parts, and where the provisions of another tariff are specifically referred to, the court must have resort thereto in determining the meaning of the tariff being construed. Plaintiff's tariff G.F.O. 3000–A is not on file, and under the rules of construction above set forth, the court cannot make a determination that defendant is entitled to judgment as a matter of law.

The court also notes that under Item 575, the privilege or service of reconsignment is subject to the rules and regulations of tariffs of the carriers parties to W.T.L. 417–D on file with the Interstate Commerce Commission and the Minnesota Railroad and Warehouse Commission, unless W.T.L. 417–D contains specific provisions to the contrary. No such tariffs have been made a part of the file, and the court therefore has been denied the aid of them for whatever light they might shed upon the meaning of the various provisions of W.T.L. 417–D under construction.

Defendant, in support of its motion for summary judgment, argues that this action is a collateral attack on a ruling by the Minnesota Railroad and Warehouse Commission that the term "transit privileges" in Item 95 does not include diversion or reconsignment. Whatever may be the merits of this contention with reference to the issue of whether, under Item 95, transit privilege includes a diversion or reconsignment, it is apparent that the determination of the Commission did not reach the issue of the existence of a route to which the rate formula of Item 95 could be applied.

Defendant's motion for summary judgment must be and is denied.