## GREAT NORTHERN RAILWAY COMPANY, Plaintiff,

v.

## COMMODITY CREDIT CORPORATION, Defendant.

### Civ. No. 3002.

United States District Court
D. Minnesota,
Third Division.

Aug. 24, 1959.

Anthony Kane, L. E. Torinus, Jr., R. W. Cronon and Curtis H. Berg, St. Paul, Minn., for plaintiff.

Fallon Kelly, U. S. Atty., Clifford Janes and John J. Connelly, Asst. U. S. Attys., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff is suing for additional freight charges on seven carloads of grain shipped from points of origin in northwestern Minnesota to Minneapolis, and thence consigned by defendant to Duluth, Minnesota. The case was heard on July 8, 1959, at Duluth, Minnesota, in conjunction with a motion to refer the matter to the Interstate Commerce Commission.

The facts have been stipulated. It appears that they are essentially the same as reported in 164 F.Supp. 442, wherein this Court denied defendant's motion for summary judgment.[1] The same contentions and problems of construction of the basic tariff are posed now as were raised at that time. Western Trunk Lines No. 417–D, C. J. Hennings, Alternate Agent (Minn.R.C. No. 412; ICC No. A–3990), remains the controlling tariff. Certain other tariffs referenced therein have now been made available to the Court as exhibits.

1. The only differences are that the shipments were originally shipped by certain country elevators and not defendant, and that a recomputation shows the claimed undercharge to be $519.07, not $597.56.

Item 95 of the basic tariff provides two methods[2] of rate computation for intrastate traffic. Item 100 makes the same rates available to interstate movement over certain routes where points of origin and destinations are in Minnesota. Defendant has paid the rate under the Item 95 formula based upon the shortest distance using not more than three lines between the points of origin and Duluth, and claims such rate is correct.

Item 100[3] limits use of that formula on interstate transportation to routes shown in Items 1100 to 1440, inclusive. Items 1100 to 1440 are prefaced by certain routing restrictions.[4]

Defendant contends Item 1290, which designates the routing between stations in Minnesota on the Great Northern, specifying "270 Duluth" and stations in Minnesota on the Great Northern, specifying "all stations", constitutes Route No. "10." Defendant contends that Route No. "10" is exempt from the restriction of No. 3000–A, and, therefore, defendant is entitled to use the short direct formula of Item 95.

Plaintiff contends (as the Court pointed out in its previous Memorandum) that any construction of the exception that would fail to subject Item 1290 to the restriction would render the restriction nugatory, for such construction would have to exclude not only Item 1290, but also all routing instructions contained in Items 1100 through 1440. It appears clear and reasonable that Items 1100 through 1440 are restricted by 3000–A.

Tariff 3000–A is a routing guide, naming routes between stations on the Great Northern. It specifies the route or routes over which a shipment may move at the rate named in a tariff which makes a specific reference to 3000–A. No route from the points of origin to Duluth via Minneapolis is provided in 3000–A nor any other tariff. Lack of such route precludes the application of the direct short rate formula provided in Item 95 of 417–D. In addition, such route would be unnatural, unreasonable and illogical, involving from 40% to 104% circuity in the instant case.

Defendant's contention that transportation from any point on Great Northern lines in any direction or directions ending at Duluth must be construed as a "route" is the precise type of construction the Eighth Circuit Court disallowed as unreasonable.[5] The Court

2. Item 95:

\* \* \* \* \*

"In the application of the distance scales of rates named in this tariff, the distances shall be determined by use of the short Intrastate distance using not more than three lines, such distances to be figured via junction points where there are track connections for the transfer of carload freight without transfer of the lading (either direct or through intermediate switching road) using distances shown in the Distance Tables listed in Item No. 165. Rates thus ascertained will apply via all Intrastate routes composed of not more than three lines. \* \*

"On shipments accorded transit privileges as authorized in tariffs of the lines parties hereto, distances shall be computed via the transit station origin to destination."

3. Item 100:
"Rates published herein for single and joint line application on Minnesota Intrastate traffic as provided in Item 95 will also apply on interstate traffic having origin and destination in the State of Minnesota and only when moving via Interstate routes as shown in Items 1100 to 1440, inclusive. \* \* \*"

4. "Routing Instructions
"Applicable only on Interstate traffic as provided in Item 100
"Except as otherwise provided, shipments from, to or via points on the GN will, while in the possession of the GN, be subject to routing instructions as published in GN G.F.O. No. 3000–A, I.C.C. No. A–6842.
"Exception.—Shipments may also be routed via other lines of the GN through reconsigning or transit points to the extent authorized in tariffs lawfully on file with the Interstate Commerce Commission, subject to conditions and additional charges, if any, provided therein."

5. A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 212 F.2d 812, affirming D.C.W.D.Mo., 108 F.Supp. 644. Although this case involved the

there rejected the contention of defendant, holding the direct short rate provided in Item 95 is not available to the shipper.

■■ Since defendant is not entitled to the direct short rate from points of origin to Duluth, what is the appropriate rate? It must be either a combination of rates computed from origin to Minneapolis plus a rate from Minneapolis to Duluth or the second method provided in Item 95. This second method is an intrastate rate computed via Minneapolis which is provided for those shipments accorded transit privileges.[6] Defendant further contends the direct short rate applies because it claims no transit privilege was involved in the service rendered in the instant case. In support of this it argues that certain of plaintiff's own tariffs define reconsignment and transit privileges and that the latter term always involves an unloading and possibly storing or processing.[7] It is conceded that the shipments concerned herein were not unloaded. Rebutting this claim plaintiff contends that the reconsignment of these cars in Minneapolis constituted a transit privilege, at least for the limited purposes of this particular tariff. The context of Item 575 [8] of 417–D, by its manner of grouping of transit privileges and other services indicates that it was intended that a reconsignment be included in the term transit privilege as used in the rate-making provisions of Item 95. This appears to be a correct construction for no route exists within the terms of the tariffs that would enable defendant to avail itself of the direct short rate between origins and Duluth and for the further reason that the short intrastate rate via Minneapolis should not be denied reconsigned shipments and at the same time allowed to shipments that are unloaded.

From the foregoing it can be seen that the construction urged by plaintiff is correct under the language of the tariffs and is one which ascribes a meaning to all parts of the tariff. Further, the extreme circuity involved and the impracticality of a route from points of origin to Duluth via Minneapolis serve to establish the construction urged by defendant as incorrect and unreasonable.

■ This case does not require preliminary referral to the Interstate Commerce Commission since the construction of the tariffs herein presents a question "solely of law" for the Court to pass upon.[9] Accordingly, plaintiff's motion for referral must be denied.

Plaintiff may submit findings of fact, conclusions of law, order for judgment and form of judgment.

Defendant may have an exception.

---

problem of routing over connecting lines, both Courts emphasized the role of reasonability in tariff construction and its relation to extreme circuity and commercial usage of routes. The distinctions made by defendant in its reply memorandum of August 4, 1959, do not affect the applicability of the rationale of this case.

6. This rate would be computed upon a transportation that is not included in No. 3000–A, the routing guide. Such transportation, however, is encompassed by the exception to the restriction preceding Item 1100 of the basic tariff. This exception is quoted in footnote 4.

7. No. 1240–Q, Item 10; 331–Q, Item 10; and 331–R, Item 10.

8. Item 575: " * * * * * * *
   "Terminal or Transit Privileges or Services, including also
   * * * * *
   "Reconsignment,
   * * * * *
   "Transit Privileges,
   * * * * * "

9. Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; United States v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126; Northern Pac. Ry. Co. v. United States, 8 Cir., 213 F.2d 366.