**UNITED STATES of America,**
**Plaintiff,**

v.

**NORTHERN PACIFIC RAILWAY COMPANY, Defendant.**

**No. 3–58 Civil 129.**

United States District Court
D. Minnesota,
Third Division.

Jan. 27, 1960.

Fallon Kelly, U. S. Atty., J. Clifford Janes, and John J. Connelly, Asst. U. S. Attys., St. Paul, Minn., for plaintiff.

Frank S. Farrell, Commerce Counsel, St. Paul, Minn., for defendant.

DONOVAN, District Judge.

This action came on for hearing at the November 1959 General Term of this Court. The matter was submitted to the Court on January 14, 1960, following trial and oral argument. The action was brought in behalf of Commodity Credit Corporation, which will be referred to herein as Commodity.

The Court has jurisdiction.[1] The facts portray common carrier receipt for and hauling of 27 carload lots of corn and wheat delivered by Commodity initially at country points of origin in Minnesota,[2] consigned to Minneapolis, a recognized grain center during the time we are here concerned with, and reconsigned to Duluth, Minnesota. In each instance the defendant was the delivering carrier of all the shipments. Plaintiff paid defendant for the amounts billed by the terminal carrier and submitted claims to defendant for alleged overcharges totaling $688.50, as shown in the complaint.

It is undisputed that the 27 carload shipments involved in the present case originated at eleven country points west of Minneapolis during the years 1953, 1954 and 1955, and were routed as billed

---

1. 15 U.S.C.A. § 714b (c).

2. See plaintiff's complaint and defendant's Exhibits A, B and C.

and directed by the consignors to Minneapolis and then diverted and reconsigned to Duluth. Fourteen of said cars moved interstate to Minneapolis and the remaining thirteen cars moved intrastate. All 27 cars moved intrastate from Minneapolis to Duluth via defendant. During said year and prior to 1959, it was common practice to move carload shipments of grain from country origin points to Minneapolis for inspection and analysis, and then divert and reconsign them to destination.[3] Defendant billed plaintiff in amounts computed on the short multiple line distance, using not more than three lines, origin to destination via Minneapolis.

Plaintiff's contention is, in effect, that Docket No. A-7080 of the Minnesota Railroad and Warehouse Commission and its Order dated December 3, 1953,[4] and the Findings, Conclusions and Memorandum of the Ramsey County, Minnesota, District Court [5] are controlling in the instant case. Hence plaintiff argues that by virtue of said Commission Docket A-7080, defining the term "transit privilege" as not including "diversion and reconsignment", it is binding upon this Court for the alleged reason that such an order has the force and effect of Minnesota law with reference to the intrastate shipments of the instant case.

Defendant contends that said Order of the Commission, as reviewed by the State Court (footnotes 4 and 5, supra), in conjunction with said tariff 417-D, defines "diversion and reconsignment as a transit privilege", requiring mileage to be computed via the transit station, that is, Minneapolis. In support of this contention defendant argues that the short line distance, direct from origin to destination, "would result in a greater charge for a shorter haul than for a longer haul" in violation of Minnesota law,[6] and would cause "unreasonable circuity", as illustrated "in the case of the Middle River shipment,[7] [where] plaintiff seeks to have rates computed on the basis of 266.1 miles, whereas shipper directed the car to be moved 518.9 miles," which defendant argues is contrary to law.[8]

Competing lines of short and long distances are permitted to "equalize" rates where mileage differs regardless of interstate or intrastate routing.

The foregoing will suffice as a summary of the issues, contentions of the parties and the facts involved in this case.

■ The plaintiff has the burden of proof. Following Commodity's experience in the Great Northern case, supra (footnote 8), it availed itself of the testimony of an able and outstanding rate expert in the trial of the instant case. The evidence of plaintiff reduced to simplicity consists of plaintiff's Exhibits 1, 2 and 3 (said tariff 417-D; the Order of the Minnesota Railroad and Warehouse Commission and the Findings and Conclusions of the reviewing State Court referred to, respectively, in footnotes 4 and 5, supra), as augmented and aided by the testimony of its rate expert. Consideration of the appellate procedure,

3. Plaintiff's rate expert so testified in substance and, commenting on the changing chain of time, added:
 "With the deep waterway * * * [accomplished in 1959] the increase on certain commodities * * * has been tremendous and the predictions for the future are greater. And, in fact, with respect to corn, [the seaport of] Duluth has taken the market away from Chicago."

4. Plaintiff's Exhibit 2 holding that the term "transit rules" as used by the Commission * * * does not include diversion and/or reconsignment.

5. Plaintiff's Exhibit 3 whereby the reviewing Court's Finding of Fact IV reads as follows:
 "That the Findings and Order of the Commission, insofar as they interpreted the existing tariffs was reasonable and is sustained by the evidence."

6. Defendant cites 15 Minnesota Statutes Annotated, § 218.041(11).

7. See defendant's Exhibit C.

8. Defendant cites A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 212 F.2d 812, and Great Northern Railway Co. v. Commodity Credit Corp., D.C.Minn., 175 F.Supp. 104.

its limitations and effect, is important in the case at bar.

■ An appeal from an order of the State Commission to the reviewing Minnesota District Court is simply another civil suit. Unless the State reviewing Court concludes that substantial rights of the appealing party have been invaded, the Court has no alternative but to affirm the Order of the Commission. There is no trial *de novo* in the State Court. The trial court, before whom the appeal is pending, lacks power to exercise the functions of the Commission and substitute its own findings for those of the administrative body. Its appellate function is purely judicial.[9]

Plaintiff's Exhibits 2 and 3 present evidence of an Order of the Commission and an appeal therefrom to the Ramsey County District Court to permit judicial inquiry as to whether said Order invades substantial rights of the appealing interested parties.

The pertinent Order and Findings of the Commission and the Court are briefly set forth, infra.

"Report, Findings of Fact and Order * * * [and] Conclusions of the Commission

"*Conclusions of the Commission*

"The report herein shows conclusively that there is a clear distinction between transit, diversion, reconsignment and stopping-in-transit for sampling and inspection.

"The report further shows that as the term 'Transit Rules' was used in the Order of the Commission in Docket A–6841, (Reopened) reference was made only to Transit.

"The report also shows that the Carriers properly interpreted the import of the Commission's Order and that they are now seeking an interpretation from the Commission to define 'Transit Privileges' to in-clude 'Diversion' and 'Reconsignment.'

"The record is clear that should any such interpretation be made the shipping public would be denied the privilege of determining rates via short line routes by the use of not more than three railroads when any accessorial service is performed by the railroads on any route of movement other than the rate-making route.

"Wherefore, the Commission finds that:

"*Findings of Fact*

"(a) That the petition of the Carriers has not been justified.

"(b) That the term 'Transit Rules' as used by the Commission in its Orders in Docket A–6841 (Reopened) does not include Diversion and/or Reconsignment.

"It Is Therefore Ordered:

"*Order*

"That the petition of the carriers be and same is hereby denied.
* * * *"

The Findings, Conclusions and Memorandum of the Ramsey County District Court follow:

"*Findings of Fact*

I.

"Prior to the filing of the petition in this matter the tariffs * * *

* * * * * *

" 'On shipments accorded transit privileges as authorized in tariffs of the lines parties hereto, distances shall be computed via the transit station origin to destination.'

"By their petition the railroad companies sought to have added to the last sentence above quoted the following:

" 'On shipments diverted or reconsigned in transits as authorized in tariffs of lines parties hereto dis-

9. Rock Island Motor Transit Co. v. Murphy Motor Freight Lines, Inc., D.C. Minn., 101 F.Supp. 978; State v. Northern Pacific Railway Co., 229 Minn. 312, 329, 39 N.W.2d 752, 762.

tances shall be computed via point of diversion or reconsignment origin to destination.'

## II.

\* \* \* \* \* \*

## III.

"That the Commission by its findings and order made no determination except that the proposed amendment would amount to a change in the tariff rates governing shipments reconsigned or diverted in transit, and made no findings and determination as to whether the change proposed in the application of the railroads was fair, reasonable and just to both shippers and carriers.

## IV.

"*That the findings and order of the Commission, insofar as they interpreted the existing tariffs was reasonable and is sustained by the evidence,* but the order of the Commission refusing to grant the application to amend the tariff is not supported by the Findings of Fact of the Commission, and in fact was not determined by the order of the Commission.

"*Conclusions of Law*

"The Court finds:

"That the Appellants are entitled to judgment and the Decree of this Court that the order of the Railroad & Warehouse Commission denying the appellants' application for an amendment of the tariffs as prayed for in said application be vacated and set aside as not supported by the Findings of Fact of the Commission, and that the matter be remanded to the Railroad & Warehouse Commission for further proceedings.

\* \* \* \* \* \*

"*Memorandum*

"It seems clear to the Court that this application presented to the Commission the following situation:

"The railroads asked specifically for a change in the existing tariff, and at the hearing in support of their claim they contended that the amendment did not in fact make any substantial change but was largely for the purpose of clarification of a tariff provision which had caused controversy between the railroads and the shippers; the State and the shippers contended that the proposed amendment affected [sic] a substantial change in the existing tariff. *The Commission having determined that the proposed amendment did affect [sic] a substantial change in the existing tariff it should have proceeded to determine the question whether the proposed change was fair, reasonable and just to both shippers and carriers.* This it failed to do.

"The Court cannot determine that question before it has been passed upon by the administrative body. The case must therefore go back to the Commission for a hearing and determination on the merits of the petition."

The emphasis throughout is that of the State Court.

Plaintiff stresses the need for compliance with the foregoing quoted Order of the Commission by citing 15 Minnesota Statutes Annotated § 218.071, Subdivision 1:

"Every duly adopted rule, order or directive of the commission shall have the full force and effect of law."

The order herein questioned, while presumptively reasonable, is reduced to a fluid state as regards "appellants' application for an amendment of the tariffs." Query: Under the circumstances, what is the effect of the Order of the Commission in the light of the State Court's Finding IV and its remand?

 Modern common law imposes upon defendant the duty of equality in freight rates to all shippers, similarly situated, for transportation of the same

class of goods for the same distance,[10] and 15 Minnesota Statutes Annotated, §§ 218.09, 218.11 and 218.13 were declaratory of that rule when said shipments were made. Rates in effect at time of shipment, though unjust or unreasonable, nonetheless prevail until lawfully changed by published tariffs, or an existing order of the Commission as provided by applicable Minnesota statutes.[11]

■■ As I view the law this Court has no original jurisdiction to determine the reasonableness of the Commission's Order or to review it. That is for the State courts to decide. The instant case illustrates this in the State Court's self-emphasized "Finding of Fact IV" quoted, supra, 180 F.Supp. 832. Whatever the ultimate disposition may be, as a result of said Court's vacating order and remanding "for further proceedings", it leaves for the present, at least, W. T. L. F. T. 417–D (plaintiff's Exhibit 1) controlling to the exclusion of the otherwise salutary effect of the Commission's expression to the contrary, as seemingly approved by the State Court, and which is still pending the determination of the required additional findings. In this sense defendant is not indulging in a collateral attack on the Commission's ruling.

This is a common law action for rates charged in excess of those provided by Order of the Commission. There has been no appeal by any of the interested parties from the reviewing Court's Findings, Conclusions and Memorandum.

Dealing with rates is a matter of vital public concern. It is regulated by statute, vesting the Commission with power to regulate by Order, subject to review by the State courts. Therefore, this Court is powerless to interfere with the unfinished business of the Commission. Conceivably, the State trial court or the Supreme Court of Minnesota may clarify the effectiveness of the Commission's

Order, following compliance with said remand.

Under the controlling tariffs, any of the carriers participating in the shipments with which we are concerned in this case are governed by plaintiff's Exhibit 1 (W. T. L. F. T. No. 417–D, I.C.C. No. A–3990, Minnesota R.C. 412) which permits rates to be computed via the short multiple line distance, via the transit station, origin to destination.

It is so ordered.

Defendant may submit findings of fact, conclusions of law and form of judgment consistent with the above, with each party bearing its own costs.

An exception is allowed to the party aggrieved.

---

10. Sullivan v. Minneapolis & R. R. Ry. Co., 121 Minn. 488, 142 N.W. 3, 45 L.R. A.,N.S., 612.

11. Watab Paper Co. v. Northern Pac. Ry. Co., 8 Cir., 154 F.2d 436.