# DAYTON COAL AND IRON COMPANY, LIMITED, *v.* CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY COMPANY .

### ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 81.   Argued November 12, 1915.—Decided December 20, 1915.

The highest court of the State is the ultimate judge of the extent of its jurisdiction; and, unless a denial of Federal rights is involved, its decision upon that subject is final and conclusive.

Where a carrier files a through joint rate with the Interstate Commerce Commission to take effect on a specified date thereafter and prior to that date the tariff is received and stamped by the connecting carrier, which thereafter receives freight under the schedule of the filed tariff, the rate becomes a joint one and there can be no departure therefrom.

Permitting a shipper to make freight payments on the basis of a rate less than that specified in the filed tariff does not modify the right of the parties to insist upon the legal rate as filed and published.

Prior to the order of the Interstate Commerce Commission of May, 1907, requiring connecting carriers to accept joint rates specifically, formal acceptance was not necessary, and the receipt of the tariff and acceptance of freight thereunder was sufficient to put the joint rate into effect.

The facts, which involve the validity of tariffs of rates filed with the Interstate Commerce Commission by carriers and of charges made by such carriers, are stated in the opinion.

*Mr. G. H. West,* with whom *Mr. W. B. Miller* was on the brief, for plaintiff in error.

*Mr. Joseph E. Brown,* and *Mr. M. M. Allison,* with whom *Mr. Foster V. Brown, Mr. Frank Spurlock* and *Mr. Claude Waller* were on the brief, for defendant in error.

Mr. Justice Day delivered the opinion of the court.

The Dayton Coal and Iron Company, Limited, hereinafter called the Dayton Company, filed its bill in the Chancery Court at Chattanooga, Tennessee, seeking to enjoin the Cincinnati, New Orleans & Texas Pacific Railway Company, generally known as, and hereinafter called, the Southern Railway, from prosecuting a certain suit in the United States Circuit Court for the Southern District of Ohio, brought by the Southern Railway against the Dayton Company to recover upon certain shipments of iron ore which it was alleged had been shipped, at a tariff of 70 cents per ton, being 10 cents more per ton than the Dayton Company contended was the true rate on such shipments. The difference amounted to $4,933.08, for which sum the Federal suit was brought.

The shipments of iron ore were made from Cartersville, and other points in Georgia, to Dayton, Tennessee, the Nashville, Chattanooga and St. Louis Railway Company, operating the Western and Atlantic Railroad Company, being the initial carrier. The bill averred that the Dayton Company had a defense against the action in the Federal Court, partly legal and partly equitable, and that the

Nashville, Chattanooga & St. Louis Railway Company
and the Western and Atlantic Railroad Company were
necessary and proper parties to the determination of the
controversy and were not within the jurisdiction of the
Federal court. It was further charged that the freight
contract was binding upon all the parties for 60 cents per
ton, and that each and all of the defendants were bound by
that rate.

The Southern Railway answered, setting up, among
other things, that, according to the requirements of the
Federal Act to Regulate Commerce, as amended in 1906,
the Nashville, Chattanooga & St. Louis Railway duly
filed and published a schedule known as "Tariff I. C. C.
# 1351A," showing the joint rate for the transportation of
iron ore from Cartersville, Georgia, and nearby points,
to Dayton, Tennessee, to be 70 cents a ton, and that
that tariff became effective on March 5, 1907; that the
Southern Railway was named as one of the parties to this
joint tariff, and it and the other defendants were bound by
it and prohibited by law from charging more or less than
the tariff named and filed; that after the tariff went into
effect on March 5, 1907, the Southern Railway billed to
the Dayton Company iron ore shipped from Carters-
ville, Georgia, and from Emerson and Rogers, Georgia,
to Dayton, Tennessee, covered by the through tariff rate,
filed as aforesaid, at the rate of 70 cents per ton, and in-
sisted and still insists upon the payment of that rate;
that the Dayton Company, insisting that the rate was
10 cents over the legal rate, had settled its freight bills
monthly, making a deduction of 10 cents by an arrange-
ment with the Southern Company; that the Dayton
Company refused to pay this difference, and therefore the
suit was brought in the United States Circuit Court for
the Southern District of Ohio, and that before answering
in that suit complainant had filed the present bill, though
the suit in the United States Court was still pending and

undetermined.   The other railroad companies defendants also filed an answer, making like allegations as to the making and filing of the 70-cent rate, effective March 5, 1907.

The Southern Railway filed a cross-bill, in which it again set up the alleged legal effect of the filing of the 70-cent rate to take effect on March 5, 1907, averring that it had paid the Nashville, Chattanooga & St. Louis Railway Company its proportion of said rate, and that the difference between the 60- and 70-cent, rate -was due to it from the Dayton Company, and asked that it be given judgment upon its cross-bill against that company on that account for the sum of $4,933.08, or, if it should be determined that it was not entitled thereto, because of the illegality of the published rate, made and insisted upon by the Nashville, Chattanooga & St. Louis Railway Company, that it have judgment for that amount against its co-defendant, the Nashville; Chattanooga & St. Louis Railway Company.   Answers were filed to this cross-bill.

Upon hearing, the Chancery Court determined the case in favor of the complainant, holding that the 70-cent rate was illegal, inequitable, and unenforceable, and that the complainant was entitled to the 60-cent rate, as contended for by it; and enjoined the Southern Railway from prosecuting its suit in the Federal court except for certain items not included in the controversy about the rates, and held that upon the cross-bill the Southern Railway was entitled to recover from the Nashville, Chattanooga & St. Louis Railway Company the 10 cents per ton which the latter company had received because of ore shipped by complainant from Cartersville and other southern points to Dayton, Tennessee, under color and by reason of the 70-cent rate.   Upon appeal the Supreme Court of Tennessee reversed the decree of the Chancery Court, and held that the 70-cent rate was

the legal rate in force from and after March 5, 1907, and that if it had jurisdiction to determine the case it would so decide. For reasons set forth in its opinion, however, it reached the conclusion that, because of the acts of Congress concerning the Interstate Commerce. Commission, there was no jurisdiction to entertain the original bill, and that it and the cross-bill must be dismissed. It is to reverse this decision that the writ of error in this case was sued out.

The Supreme Court of Tennessee is, of course, the ultimate judge of the extent of its jurisdiction, and unless a denial of Federal rights is involved, its decision upon that subject is final and conclusive. From what we have already said, however, it is apparent that the real Federal question involved in this controversy concerns the right of the Southern Railway to enforce the 70-cent rate on the shipments of iron ore from Cartersville and other points in Georgia to Dayton, Tennessee. Upon this point the Supreme Court reached the conclusion that the 70-cent rate was the only legal rate in force at the time of the shipments; that it was filed with the Interstate Commerce Commission on February 2, 1907, to take effect on March 5, 1907; that it was thus filed by the Nashville, Chattanooga & St. Louis Railway Company and duly received and stamped by the Southern Railway as the connecting carrier; and that the last-named railroad concurred in the tariff by receiving freight under that schedule and making settlements under it. This made the rate a joint one, in accordance with the rulings of the Interstate Commerce Commission at that time, and under the Interstate Commerce Act there could be no departure from this published rate.

Our examination of the record satisfies us, *Kansas Southern Ry.* v. *Albers*, 223 U. S. 573, that upon this question of the legal effect of the filed tariffs and the consequent establishment of the 70-cent rate the Supreme

Court of Tennessee was clearly right. It appears that the 70-cent rate was duly filed by the Nashville, Chattanooga & St. Louis Railway with the Commerce Commission; that it became effective upon March 5, 1907; that the connecting carrier, the Southern Railway, received the tariff and stamped and filed it, and acted upon it, insisting that 70 cents was the legal rate, although permitting the Dayton Company to make payments at the rate of 60 cents per ton. Such payments could not have the effect to modify the right of the parties to insist upon the legal rate as filed and published. True, the Southern Railway did not formally inform the initial carrier of its acceptance of this tariff; nor was this necessary. *United States* v. *N. Y. Central R. R.*, 212 U. S. 509. This practice of acceptance without formal notice was recognized by the Interstate Commerce Commission, as appears by its orders set out in the record, until the order of the Commission in May, 1907, requiring acceptance to be specifically given and certified to the Commission, thus avoiding the confusion and misunderstandings which arose under the former practice.

That it is essential to the maintenance of uniform rates and the avoidance of rebates and preferential treatment that the tariff rates filed with the Commission according to the Interstate Commerce Act, while in force, shall be the only rates which the carrier may lawfully receive or the shipper properly pay is too thoroughly settled by the former decisions of this court to require further discussion. The principle is stated and many previous cases in this court cited in a case decided at the last term, *Louis. & Nash. R. R. Co.* v. *Maxwell*, 237 U. S. 94, 97, 98.

It follows that the Supreme Court of Tennessee did not err, in so far as any Federal right is involved, in the judgment rendered dismissing the bill.

*Affirmed.*