## FORT WORTH & D. C. RY. CO. v. F. BURKART MFG. CO.

No. 619.

District Court, E. D. Missouri, E. D.

July 18, 1944.

Rassieur, Kammerer & Rassieur, of St. Louis, Mo., for plaintiff.

Lashly, Lashly, Miller & Clifford, of St. Louis, Mo., for defendant.

HULEN, District Judge.

This cause was submitted on an agreed statement of facts. Defendant purchased 1,000 bales of cotton from one Pruden to be delivered F.O.B. St. Louis, payment to be made by sight draft. The bills of lading were made out to Pruden's order. Pruden and plaintiff as carrier entered into a conspiracy as a result of which the commodity was wrongfully labeled as cotton regins, instead of compressed and uncompressed cotton. Cotton regins travel at a lower freight rate than compressed and uncompressed cotton. Pruden paid the freight charge and as a result of his conspiracy with plaintiff made the shipment to defendant at a cost for freight charges of $3,494.65 less than the published tariffs on file covering the commodity shipped. The defendant presented the bill of lading to plaintiff at St. Louis and received the shipment of cotton. Subsequently, plaintiff, Pruden and others involved in the conspiracy were convicted for causing the shipment in question to be transported at a rate less than that required by law. At the time defendant received the shipment it was innocent of knowledge of the wrongdoing of plaintiff and Pruden and that the shipment had traveled at less than the lawful rate. Pruden is insolvent and the balance due on the shipment has been demanded of the defendant. Defendant refused payment. This suit followed.

Defendant concedes the law to be that absent fraud, failure of a carrier to collect lawful freight rates on a shipment does not preclude their recovery on discovery of the error by the carrier. It is the position of the defendant that a carrier cannot recover an undercharge from an innocent party where such undercharge results from the carrier's fraud, and the person against whom collection is sought is innocent of any wrongdoing.

In the case of Central Warehouse Co. v. Chicago, R. I. & P. R. Co., 8 Cir., 20 F. 2d 828, recovery of freight charges, resulting from an undercharge was sought

from a consignee who defended unsuccessfully on the ground that it had accepted shipment in reliance on a bill of lading endorsed "prepaid". Suit was instituted against the consignee because the shipper was insolvent. There the Court held (20 F.2d loc. cit. 829): "Congress, in order to eliminate every form of discrimination, has provided that there shall be permitted *neither an intentional* nor an unintentional deviation from the predetermined schedule of rates. An intentional act in granting a shipper a preferential rate was made a crime. *To permit a departure from the regular rate provided only that it is the result of a misunderstanding or a mistake defeats the very purpose of the law.* The Supreme Court in considering the statute has determined that the carrier has a lien for the usual charge, and that the consignee in accepting the shipment in any case assumes the obligation of discharging that lien. *This obligation on the part of the consignee is not to be avoided because it imposes a hardship, or because he has relied upon the fact that the charges have been paid and changes his position to his detriment.* The prime consideration that led to the enactment was deemed of such consequence to the public interest *that individual cases of hardship ought not overcome the law.* (Emphasis added.)

■ The Supreme Court, in the case of Keogh v. Chicago & N. W. R. Co., 260 U. S. 156, 43 S.Ct. 47, 67 L.Ed. 183, had before it a case brought under the Anti-Trust Act against various railroads and individual defendants charged with conspiracy relating to establishment of certain rates of transportation on excelsior and tow. That the tort of the plaintiff in the present case can be successfully urged as a defense is denied by the ruling in the Keogh case. We quote (260 U.S. loc. cit. 163, 43 S.Ct. loc. cit. 49, 67 L.Ed. 183): "The rights as defined by the tariff cannot be varied *or enlarged by either* contract *or tort of the carrier.* Texas & Pacific R. R. Co. v. Mugg [& Dryden], 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011; Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A. 1915E, 665; Atchison, Topeka & Santa Fé R. Co. v. Robinson, 233 U.S. 173, 34 S. Ct. 556, 58 L.Ed. 901; Dayton [Coal &] Iron Co. v. Cincinnati, New Orleans & Texas Pacific R. Co., 239 U.S. 446, 36 S.Ct. 137, 60 L.Ed. 375; Erie R. Co. v. Stone, 244 U.S. 332, 37 S.Ct. 633, 61 L.Ed. 1173. And they are not affected *by the tort of a third party.* Compare Pittsburgh, Cincinnati, Chicago & St. Louis R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151." (Emphasis added.)

See also Bush v. Keystone Driller Co., 199 Mo.App. 152, 199 S.W. 597, loc. cit. 599: "Then, if plaintiff and defendant could not by contract relieve plaintiff of the obligation of charging, and the defendant of the obligation of paying, the lawful rate, can the same result be accomplished by the act, or the failure to act, of either? We think not. It is the plain duty of this court to follow the last ruling of the Supreme Court of the United States upon a question of the character here presented, which is the construction of a federal statute; and in doing so we are following the directions of our own Supreme Court. Haseltine v. Central National Bank, 155 Mo. 66, 56 S.W. 895."

■ In effect it is defendant's position that plaintiff, by its unlawful agreement with Pruden to collect less than the lawful rate on the shipment, has estopped itself to now maintain an action for the amount of the undercharge. Estoppel does not arise in this character of cases. In Great Northern R. Co. v. Hyder, D.C. 1922, 279 F. 783, 786, the Court, in answering the contention that the mistake made by a carrier in delivering the shipment to the consignee without requiring payment of the freight charges by the consignor precluded recovery from the consignee, said: "The railroad, suing in its interest, alone, might be estopped; but in suing under the statute, it is suing as a trustee for the protection of the public. The public, in whose interest, as well as its own, the carrier has a lien on the undelivered freight for the full rate, is not estopped, because it did no act and made no representation on which the consignee relied, and, when the consignee accepted the goods, it deprived the public of that lien. It follows that the consignee, because of such act, still remains liable to the carrier, who sues in the public's interest, for the value of the right destroyed."

With further reference to this point, it was stated in New York, N. E. & H. R. Co. v. York & W. Co., 1913, 215 Mass. 36, 102 N.E. 366, 368, (writ of error dismissed in 1915, 239 U.S. 631, 36 S.Ct. 166, 60 L.Ed. 477) "Estoppel against the collection of a rate fixed by rigid law cannot be predicated upon a statement or representation, which at most can be of no higher binding force

than an express contract to the same effect honestly made by both parties would be. Such a contract would be of no avail in any aspect, because contrary to law. Estoppel cannot rest on an illegal contract. * * * The regulation by Congress of interstate commerce rates takes that subject out of the realm of ordinary contract in some respects, and places it upon the rigidity of a quasi statutory enactment. The public policy thus declared supersedes the ordinary doctrine of estoppel so far as that would interfere with the accomplishment of the dominant purpose of the act. It does not permit that inequality of rates to arise indirectly through the application of estoppel, which it was the aim of the act to suppress directly."

And in Forster Bros. Co. v. Duluth, S. S. & A. R. Co., 1908, 14 I.C.C. 232, 236, the Commission stated: "The Commission cannot consider an erroneous rate quotation made by an agent of a carrier as the basis for an award of reparation to a shipper who thereby suffers damage. Collusion between the carrier and a shipper, which it desired to favor, for protection of other than the tariff rates, would be rendered too easy of accomplishment. In such case the carrier could protect any rate which it might desire to apply by simply quoting it to the favored shipper, and thus the integrity of the published tariffs (a strict observance of which is required by law in order to prevent unjust discriminations) would be constantly violated."

Defendant cites the case of American Express Company v. Sweeney, D.C., 283 F. 691. This case does sustain defendant's position, but has not been followed by the Appellate Courts. See Herminghausen v. Adams Express Co., 167 Iowa 230, 149 N. W. 234, where the Court held that a shipper is not entitled to recover the difference between the amount at which the shipment was billed and the greater amount which the carrier forced him to pay in order to secure delivery from the carrier at destination, notwithstanding the representation of the carrier's agent in the original shipment that the charges were made fraudulently, with intent to deceive the shipper.

Nothing herein said should be taken as approval of the plaintiff's conduct as evidenced by the record in this case, nor are we without sympathy for defendant in the position thus created, but the function of this Court is "jus dicere, and not jus dare."

In the alternative, defendant pleads a counterclaim. Its basis is that if plaintiff is entitled to judgment in this case, then defendant has been damaged in the exact sum which plaintiff sues for. Defendant relies upon the set-off and counterclaim statute of Missouri.

There seems to have been a difference of opinion, among various Appellate Courts, as to whether a counterclaim could be considered in a case of this character. It has been held by a Missouri Appellate Court that it could not:

"Our statute, referred to supra, prohibiting unjust discrimination was intended to eliminate the same evils within its scope of operation as was the federal statute prohibiting unjust discrimination within its scope. The same reasons applied in the federal courts in reaching the conclusion that a counterclaim will or will not lie in an action by a carrier to recover transportation charges on an interstate shipment are equally applicable on the same question when presented in an intrastate shipment. In Bush v. Keystone Driller Company, supra, we held that estoppel could not be pleaded as a defense in an action by a carrier to recover a balance of transportation charges due on an interstate shipment. There we also considered by way of analogy the counterclaim question, and expressed our opinion as to the right to plead a counterclaim in such case. True, a counterclaim was not there involved, but quite a similar principle was involved, and what we there said respecting the defense of counterclaim we think sound and more in keeping with the letter and spirit of the law denouncing unjust discrimination than are the cases to the contrary.

"It is our conclusion that defendants' counterclaim cannot be interposed. Reaching this conclusion, it follows that the judgment should be affirmed, and it is so ordered." St. Louis-San Francisco R. Co. v. Morgan, 221 Mo.App. 43, 297 S.W. 717, loc. cit. 718.

To the same effect is the holding of the Eighth Circuit Court of Appeals. See Fullerton Lumber Co. v. Chicago, M. S. P. & P. R. Co., 36 F.2d 180, loc. cit. 182: "On the question whether a counterclaim for damages for losses arising out of the shipment may be interposed in this kind of an action to collect freight charges, there is conflict of federal decisions. It appears that the trial courts in this cir-

cuit confine the issues and the trial in the cases to the freight charges, and we think this conforms to the intent of Congress reflected in the acts relating to interstate commerce."

The opinion in the Fullerton case was handed down in November, 1929. In January following, the Supreme Court in the case of Chicago & North Western R. Co. v. Lindell, 281 U.S. 14, loc. cit. 18, 50 S.Ct. 200, loc. cit. 201, 74 L.Ed. 670, took the opposite view: "The act ought not to be construed to put aside state laws and long-established practice in respect of pleading unless the intention of Congress so to do is plain. There appears no reasonable probability that the relegation of shippers to separate actions for the enforcement of their claims for loss or damage would operate more effectively to enforce the purpose of Congress to prevent discrimination. There is no substantial ground upon which the act may be given the construction for which the carrier contends."

But defendant seems not to have reckoned with the "state law" if designation of his pleading as a "counterclaim" is not in fact a misnomer. We think it is. What defendant calls a counterclaim is nothing more or less than a defense to plaintiff's action. If defendant pays the amount due plaintiff it claims it is damaged in that sum. But how? No facts upon which damage could be predicated are plead. There is no charge that defendant did not get what he ordered and paid for. To sustain a claim based upon plaintiff's attempt to violate the law would be to nullify the statute against discrimination in freight rates.

The Missouri Counterclaim Statute (Section 929, R.S.1939, Mo.R.S.A.), reads in part: "The counterclaim mentioned in the last section must be one *existing* in favor of a defendant and against a plaintiff, between whom a *several judgment might be had in the action*."

Defendant claims no damages—unless in this action a judgment is rendered against it. The counterclaim does not now exist. On defendant's theory it would never be damaged unless it paid the judgment. Should plaintiff dismiss its case, defendant could have no "severable judgment" on its counterclaim.

### Findings of Facts

(1) Plaintiff is a Texas corporation engaged in the business of a railroad company and defendant is a Missouri corporation engaged in a commercial enterprise with its principal place of business located in St. Louis in the Eastern Division of the Eastern Judicial District of Missouri.

(2) This is a controversy between citizens of different states and the matter in controversy, excluding interest and costs, exceeds $3,000.

(3) From March 17, 1938, to April 19, 1938, plaintiff and its connecting carriers transported various shipments of compressed and uncompressed cotton, collecting freight charges thereon on the basis of a cotton regins rate. Among said shipment were the shipments involved in this suit.

(4) On or about March 7, 1938, defendant ordered from John B. Pruden of Lubbock, Texas, 1,000 bales of cotton according to sample submitted by Pruden; the terms of sale were F.O.B. St. Louis, Missouri, payment to be made by sight draft through First National Bank in St. Louis, Missouri, on arrival and inspection of the stock by defendant.

(5) After arrival of the shipments in St. Louis, plaintiff or its connecting carrier notified defendant of such arrival. Defendant thereupon inspected the shipments to determine whether or not they were according to sample. Finding them to be according to sample, defendant paid the sight drafts and received from First National Bank, the shipper's agent, the bills of lading for said shipments, endorsed by Pruden. Thereafter defendant presented said bills of lading to plaintiff or its connecting carrier and received the shipments.

(6) The suit at bar pertains to the shipments made by Pruden over plaintiff's lines and the lines of the St. Louis Southwestern Railway from Lubbock, Texas, to St. Louis, Missouri, between March 17 and April 19, 1938. The bills of lading were issued by plaintiff to Pruden as shipper and were consigned to Pruden's order. Defendant was designated on the bills of lading as the party to be notified of arrival of the shipment. Prior to shipment, plaintiff collected freight charges from Pruden, and plaintiff marked the bills of lading prepaid.

(7) The compressed and uncompressed cotton shipped was of low grade and difficult to distinguish from cotton regins. Both the plaintiff and shipper knew the commodity shipped was not cotton regins but they wrongfully labeled and shipped it as cotton regins. Defendant was not a party to the issuance of the bills of lading and de-

fendant had nothing to do with the misclassification or mislabeling thereof and had no knowledge thereof.

(8) The compressed and uncompressed cotton accepted by defendant was not cotton regins and a higher rate was applicable to compressed and uncompressed cotton than was applicable to cotton regins.

(9) At all times during the shipments at bar, there were properly published tariffs on file covering both cotton regins and the higher compressed and uncompressed cotton.

(10) At and during the times the shipments were made, transported and delivered, John B. Pruden was the shipper and consignee thereof; E. C. Kuykendall was plaintiff's general agent and R. E. Stroup its local freight agent at Lubbock, Texas; and E. M. Vernon was general agent at Amarillo, Texas, for St. Louis Southwestern Railway. Subsequently, in May, 1939, in the District Court for the Northern District of Texas, plaintiff was indicted and charged with knowingly, and by means of a device, unlawfully granting and giving concessions to the shipper in connection with the shipments at bar, and plaintiff pleaded guilty and was assessed a fine by the Court and plaintiff paid the fine. Defendant was in no way or manner implicated therein.

(11) Also in May, 1939, said Pruden, Kuykendall, Stroup and Vernon were indicted in the District Court for the Northern District of Texas and charged with wilfully, knowingly and feloniously combining, conspiring, confederating and agreeing together and with each other that they would, by a device, cause to be transported by plaintiff the shipments at bar at a less rate than required by law. Thereafter said indictments against said Kuykendall, Stroup and Vernon were changed from a felony to a misdemeanor, and said Kuykendall, Stroup and Vernon pleaded guilty to the misdemeanor charged and paid the fines assessed by the Court. Said Pruden pleaded guilty to the felony charged. Defendant was in no way or manner implicated in such action.

(12) The undercharge in the shipments at bar total $3,494.65. Plaintiff made various attempts to collect said undercharge from the shipper, Pruden, but he refused to pay same and shortly thereafter became insolvent. Plaintiff has heretofore demanded payment thereof from defendant, and defendant refused and still refuses to make payment to plaintiff.

### Conclusions of Law

1. Under the provision of paragraph 7 of Section 6 of Title 49 of the United States Code Annotated, common carriers are prohibited from granting, by any means, discrimination and undue preferences in freight rates to shippers, on shipments in interstate commerce.

2. Plaintiff could not under the facts in the case waive or estop itself from collecting the lawful freight rates on the shipment received by the defendant.

3. Unless the lawful freight charges are collected by the plaintiff from defendant there will be discrimination shown in favor of the defendant by the plaintiff, contrary to the provisions of the statutes.

4. Defendant cannot recover on the alleged counterclaim plead.

### Order of the Court

It is therefore adjudged, that the plaintiff recover from the defendant in the sum of $3,494.65, and defendant take nothing by its counterclaim. Costs taxed against defendant.