(No. 30991.—)
THE PEOPLE ex rel. Robert Isbell, County Collector, Appellee, vs. WILL M. ALBERT, Appellant.

*Opinion filed May 19, 1949.*

**470**

WILL M. ALBERT, of Vandalia, appellant *pro se.*

J. RICHARD ROYAL, State's Attorney, of Vandalia, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Will M. Albert, having previously paid seventy-five per cent of his taxes under protest, filed objections in the county court of Fayette County to an application of the county collector for judgment against and an order of sale for the sale of real estate for the nonpayment of taxes for the year 1946. In substance, the taxpayer asserted that the taxes levied were illegal to the extent that they were extended upon valuations resulting from the application of an equalization or multiplication factor, as determined by the Department of Revenue, without notice and without an opportunity for a hearing, in contravention of Federal and State guaranties of due process of law. From the judgment entered overruling his objections, defendant prosecutes this appeal.

From the stipulation of facts upon which the cause was tried, it appears that, in 1946, defendant was the owner of twenty different parcels of land in Fayette County. The

assessed value of these lands had been determined at the preceding quadrennial assessment of 1943. Neither the assessor nor the board of review changed the assessments for the taxable year 1946. Defendant made no complaint to the board of review prior to its adjournment on September 7, 1946. Thereafter, on December 14, 1946, the Department of Revenue certified to the county clerk an equalization factor of 29 and a multiplier of 3.4483, as determined by the Department, in accordance with section 146 of the Revenue Act of 1939, as amended. Ill. Rev. Stat. 1947, chap. 120, par. 627.

The equalization factor signified that the Department of Revenue had determined that the aggregate of the valuations approved by the assessor and board of review was only 29 per cent of the full fair cash value of all the property in the county and that the valuation of each parcel was to be increased by the percentage indicated by the multiplier. Thereafter, the county clerk multiplied the assessed value of each parcel of land in the county by 3.4483. The combined tax rates of the various taxing authorities were then extended on the basis of the higher valuations thus obtained. With regard to the properties owned by defendant, these rates ranged from $1.66 to $2.3397 per one hundred dollars of assessed valuation after the application of the multiplier to the assessed values previously determined by the local tax officials.

In connection with the proceedings of the Department of Revenue in arriving at the equalization ratio or factor of 3.4483 for Fayette County, it was stipulated (1) that the Department of Revenue did not notify defendant such a ratio for the year was to be determined on any certain date; (2) that no agency of the State notified defendant the ratio had been determined on any certain date, and (3) that the county clerk did not give defendant notice the ratio was received by him from the Department of Revenue. Likewise, it was agreed that neither the Department

of Revenue nor the county clerk had ever notified defendant of the amount or size of this ratio and that no notice of the ratio or its amount was officially published by any governmental agency. On the other hand, defendant admitted that he never filed a written objection to the ratio or equalization factor fixed by the Department of Revenue, and that he had made no application to the Department to be heard when the matter was determined. The first notice which defendant received that his lands had been assessed at a valuation other than that fixed by the board of review · was on May 27, 1947, when he received his tax bill for the year 1946. Subsequently, on August 30, 1947, defendant filed objections to the taxes.

Defendant made no objection to the taxes upon the ground that the assessments were fraudulently made nor upon the ground that the increase in the assessments amounts to a constructive fraud on him, the taxpayer. By the stipulation, defendant restricted his objections to the contention that the only taxes legally due were the amounts obtained by extending the tax rates of the different taxing authorities to the assessed value of his lands as fixed by the assessor and the board of review before the application of the multiplier 3.4483. In like manner, the issues in the cause were limited to the single question of whether the procedures followed by the Department of Revenue in determining the multiplier and the action of the county taxing authorities in applying the multiplier and extending taxes on the increased assessed valuation, thereby increasing the assessed valuation of defendant's real estate for the year 1946, constituted a violation of due process of law.

Long ago, in *Adsit* v. *Lieb,* 76 Ill. 198, this court held that the General Assembly enjoyed the right to establish the State Board of Equalization. The present successor to this board is the Department of Revenue, which is invested with the power to equalize the assessments of the different counties to the end of producing uniformity in

assessed valuations among the counties throughout this State. Defendant complains that the Department of Revenue and the county clerk, in raising the assessed valuations of property in Fayette County, conformably to sections 146, 149, 151, 161, 162 and 163 of the Revenue Act, without notice by the Department to him and other taxpayers, have violated the guaranties of due process of law.

Section 130 of the Revenue Act (Ill. Rev. Stat. 1947, chap. 120, par. 611,) provides that the Department of Revenue shall (1) "Direct and supervise as provided by this Act the assessment for taxation of all real and personal property in this State to the end that all assessments of property be made relatively just and equal; * * * (7) Equalize the valuation and assessment of property throughout the State between the different counties of the State and fix the aggregate amount of the assessment for each county upon which taxes shall be extended." The primary purpose of the statute, as amended, is the correction of irregularities formerly appearing in the assessment of property. In *Anderson* v. *City of Park Ridge,* 396 Ill. 235, we said, "The first objective was to change the law to require a stricter compliance with the direction to value property at its full, fair market value. To accomplish this, local assessing officers were, as formerly, commanded to assess at full value."

Section 146 of the Revenue Act provides that the Department shall act as an equalizing authority and, in so acting, it shall lower or raise the total assessed value of property in any county as returned by the county clerk so that such property will be assessed at its full, fair cash value. This section refers to the equalization of property values over the entire State and is designed to bring all properties in all counties to a one-hundred-per-cent valuation. *People ex rel. Ingram* v. *Wasson Coal Co.* 403 Ill. 30.

Section 149 provides the method or manner of equalizing, as follows: "The assessments of all property, as re-

turned by the county clerks, shall be equalized by adding to the aggregate assessed value thereof in every county in which the Department may find the valuation to be less than full, fair cash value, such rate per cent as will raise the same to its full, fair cash value, and by deducting from the aggregate assessed value thereof, in every county in which the Department may find the valuation to be more than full, fair cash value, such per cent as will reduce the same to its full, fair cash value."

Section 151 provides, in part, "When the Department shall have completed its equalization of assessments for any year, it shall certify to the several county clerks the percentage finally determined by it to be added to or deducted from the listed or assessed valuation of property in the several counties, as returned by the respective county clerks."

Section 161 directs each county clerk to apply the percentages of addition or deduction certified by the Department and to enter the equalized valuations in the several columns provided for this purpose. "The percentages certified by the Department," it is further provided, "shall be applied to the assessed valuation of property, as corrected and equalized by the board of review, board of appeals, or local assessment officers, as the case may be."

Section 162 makes provision for the determination of tax rates. Section 163 declares, "All taxes shall be extended by the respective county clerks upon the property in their counties upon the valuation produced by the equalization and assessment of property by the Department."

A recognized distinction obtains between an "assessment" and an "equalization of assessment." Stated differently, there is a basic difference between an increase of an individual assessment and a horizontal raise or equalization of assessment. In *People ex rel. Bracher v. Orvis*, 301 Ill. 350, this court quoted from Cooley on Taxation, 3d ed. 784-786, as follows: "Equalization of assessments has for

its general purpose to bring the assessments of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax. * * * This is not done by changing individual assessments, but by fixing the aggregate sums for the several districts at what, in the opinion of the board, they should be, so that general taxes may be levied according to this determination instead of on the assessor's footings. These boards act judicially in equalizing, and their decision is conclusive. * * * They are not bound to give notice to taxpayers before raising the assessment of the district except as the statute may provide for it. In raising or reducing the assessment of a district it is sufficient for the board to designate a percentage of increase or reduction."

In *People ex rel. Bracher* v. *Millard,* 307 Ill. 556, this court said, "Equalization of assessments is the adjustment of graduated values of property as between different taxing districts, so that the whole tax imposed upon each taxing district shall be justly proportioned to the value of the taxable property within its limits, in order that one taxing district may not pay a higher tax in proportion to the value of its taxable property than another."

In *People ex rel. Little* v. *Collins,* 386 Ill. 83, we pointed out that "assessment" and "equalization" by the Department of Revenue are separate processes or functions, and that taxpayers have the right to appeal from the original assessment, as published, as well as the right to challenge the equalization factor employed if it is improperly calculated or applied. As pertinently observed in *Union Pacific Railroad Co.* v. *Board of Comrs.* 35 Fed. 2d 785, "Assessment is personal, while equalization is impersonal."

Where a horizontal raise is made either by the Department of Revenue or a board of review, the notice required to be given to a taxpayer does not have to be the same type of notice, nor does it have to be personal notice, as is

required where the increase of an individual assessment is made by a board of review or some reviewing body. (*People* v. *Millard*, 307 Ill. 556; *People* v. *Orvis*, 301 Ill. 350; *Adsit* v. *Lieb*, 76 Ill. 198.) Specifically, in *People* v. *Orvis*, 301 Ill. 350, this court held that paragraph 3 of section 35 of the Revenue Act of 1898, providing for the equalization of assessments in any taxing district which were found to be too low or too high, did not violate the guaranty of due process of law in permitting a board of review to make a horizontal raise of an assessment by notice to at least fifty property owners in the taxing district, although personal notice was not given to every owner in the district. In *People* v. *Orvis*, the contention was made that in order for this statutory provision to be constitutional, the act should require the giving of notice to every property owner affected. Answering, this court said, "The question whether or not notice to each taxpayer is necessary in order to give the board of review authority to equalize an assessment by a horizontal raise has not been directly passed upon in this State. * * * The duties discharged by the board of review under paragraph 3 of section 35 are similar to those discharged by the State Board of Equalization in equalizing property values. The State Board of Equalization has power, after a levy of an assessment has been made and returned, to raise the assessment in an entire county, if in its judgment such appears necessary in order to bring about equality or uniformity of taxation. It has never been held that the board of review or the State Board of Equalization, in equalizing taxes, must give notice to every property owner in the taxing district affected where the property valuation in such taxing district is raised, and, indeed, to require that such be done would make the matter of assessment and equalization of taxes wholly impracticable and impossible. * * * Laws must have a practical application. To require personal notice to every taxpayer of a proposed equalization of the assess-

ment of the property of a taxing district would render such equalization practically impossible and prevent compliance with the requirements of the constitution concerning equal taxation. It is only by such equalization that the provisions of the constitution demanding equal taxation can be complied with."

If notice be deemed necessary, it is sufficient that the time and place of meeting of the Department of Revenue is provided by statute. Sections 17 and 18 of the statute in relation to the civil administration of the State government (Ill. Rev. Stat. 1947, chap. 127, pars. 17, 18,) provide that each department shall maintain a central office in the capitol building at Springfield, and, under the conditions described, may maintain, at places other than the seat of government, branch offices for the conduct of any one or more functions of the department, and that each department shall remain in continuous session for the transaction of public business. *Bi-Metallic Investment Co.* v. *State Board of Equalization of Colorado,* 239 U.S. 449, holds that a statute of the State of Colorado giving the time and place of meeting of an equalization board afforded sufficient notice to taxpayers of a horizontal raise so as to satisfy the due process requirements of the first section of the fourteenth amendment to the Federal constitution. Speaking for the court, Mr. Justice Holmes said, "The question * * * is whether all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned—here, for instance, before a superior board decides that the local taxing officers have adopted a system of undervaluation through a county, as notoriously often has been the case. The answer of this court in the *State Railroad Tax Cases,* 92 U.S. 575, at least as to any further notice, was that it was hard to believe that the proposition was seriously made. Where a rule of conduct applies to more than a few people it is impracticable that everyone should have a direct voice in its adoption.

The constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the State power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. * * * In considering this case in this court we must assume that the proper State machinery has been used, and the question is whether, if the State constitution had declared that Denver had been undervalued as compared with the rest of the State and had decreed that for the current year the valuation should be forty per cent higher, the objection now urged could prevail. It appears to us that to put the question is to answer it. There must be a limit to individual argument in such matters if government is to go on."

Similarly, in *Adsit* v. *Lieb,* 76 Ill. 198, this court observed, "The objection that appellant had no notice of the meeting of the Board of Equalization or of its action, is untenable. The law is a public one, which prescribes the duties and designates the time of meeting of the board, and all citizens are bound to take notice of it. The constitution imposes no obligation upon the legislature, requiring that such notice shall be provided for, or that an appeal shall be allowed from the action of the board."

Similarly, our Revenue Act prescribes the time within which each county clerk must submit the abstract of assessments to the Department of Revenue, (Ill. Rev. Stat. 1947, chap. 120, par. 609,) namely, within thirty days from the receipt of assessment books from the respective boards of review. Since the county clerks must deliver the books for collection of taxes by December 31, (Ill. Rev. Stat. 1947, chap. 120, par, 653,) it follows, necessarily, that the Department of Revenue must certify the equalization factor or ratio to the county clerks before the day named. In

short, for all practical purposes, the time is fixed by statute when the Department of Revenue is to begin and complete its work. The Revenue Act does not deny taxpayers the right to appear before the Department of Revenue to protest, as defendant insists. Section 152, (Ill. Rev. Stat. 1947, chap. 120, par. 633,) invoked by defendant, provides merely that the Department shall not have any power, jurisdiction or authority to review, revise, correct or change any individual assessment made by any local assessment officer.

The cases of *People ex rel. Rea* v. *Nokomis Coal Co.* 308 Ill. 45, *St. Louis Merchants' Bridge Co.* v. *Eisele,* 263 Ill. 50, *People ex rel. Rogers* v. *Centralia Gas and Electric Co.* 238 Ill. 113, *Cox* v. *Hawkins,* 199 Ill. 68, and *Huling* v. *Ehrich,* 183 Ill. 315, do not support defendant's assertion that an increased assessment made by an equalizing body without authority of law is void. In each of the five cases cited, the question of notice involved related entirely to situations where an individual assessment was increased without notice, in contradistinction to an equalization of assessment.

The defendant makes no objection that his individual property has been assessed more than 100 per cent of its value or that the resulting assessed value is fraudulent as to him. If the application of the equalization factor of 3.4483 resulted in a fraudulent or excessive assessment of a particular taxpayer's property, it is obvious that such individual taxpayer had no opportunity for relief from the board of review which had adjourned before the establishment of the equalization factor. An individual taxpayer could be heard on the question of an excessive or fraudulent character of his individual assessments by tax objection procedure in the county court, notwithstanding he had not complained to the Department of Revenue or to the board of review where there had been no opportunity to do so.

This, however, is a different question from that presented in this case, which is limited to the validity of the procedure establishing the general equalization factor.

Defendant also raises the question whether the assessed valuation of his property was made in accordance with section 1 of article IX of our constitution. Although defendant limited the constitutional issues presented for decision in the stipulation of facts upon which the cause was tried, the contention made for the first time upon this appeal is adequately answered in *Anderson* v. *City of Park Ridge,* 396 Ill. 235. To the contention urged by the City of Park Ridge that section 162a of the Revenue Act violated section 1 of article IX, we said, "The power to levy taxes for the support of government is a necessary incident of sovereignty and is possessed by the State without being expressly conferred by the people. The power to determine the method by which property may be valued for tax purposes is in the General Assembly and is unlimited except as to the constitutional requirement that it shall be valued so that every person and corporation shall pay in proportion to the value of his, her or its property."

The judgment of the county court of Fayette County is affirmed.

*Judgment affirmed.*