UNITED STATES of America
v.
SEATRAIN LINES, INC., Defendant.

No. 71 Civ. 4150.

United States District Court,
S. D. New York.

March 16, 1973.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y. (Gilbert S. Fleischer, Francis A. Nicolai, New York City, Admiralty & Shipping Div., of counsel), for plaintiff.

Burke & Parsons, New York City (Thomas E. Durkin, Jr., Newark, N. J., of counsel), for defendant.

BAUMAN, District Judge.

This action was commenced by the United States to recover the statutory penalties prescribed for violation of Section 2 of the Intercoastal Shipping Act of 1933 ("the Act"), 46 U.S.C. § 844.[1] Presently before the Court is a motion by the government for summary judg-

---

1. Section 2 of the Intercoastal Shipping Act of 1933, 46 U.S.C. § 844, provides in pertinent part that—

"From and after ninety days following March 3, 1933, no person shall engage in transportation as a common carrier by water in intercoastal commerce unless and until its schedules as provided by this section have been duly and properly filed and posted; nor shall any common carrier by water in intercoastal commerce charge or demand or collect or receive a greater or less or different compensation for the transportation of passengers or property or for any service in connection therewith than the rates, fares, and/or charges which are specified in its schedules filed with the Federal Maritime Board and duly posted and in effect at the time; nor shall any such carrier refund or remit in any manner or by any device any portion of the rates, fares, or charges so specified, nor extend or deny to any person any privilege or facility, except in accordance with such schedules."

ment on the grounds that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

The facts are not in issue. Defendant is a common carrier which transports cargo by sea between Puerto Rico and New York. It is charged with failing to comply with its published tariff by not collecting certain demurrage which should have been charged against consignees who failed to remove their cargo from its terminal within the time specified in its tariff regulations. Since it is undisputed that no such charges were billed or collected, the sole question presented is whether the defendant violated the Act by disregarding a provision of its tariff.

During the period of time embraced by the complaint, the defendant's tariff contained the following specific reference to demurrage. Item # 170 provided that—

"All merchandise remaining at the carrier's terminal undelivered six (6) days, Saturdays, Sundays and legal holidays excluded, after carrying steamer has completed discharging, will be placed in public store or warehouse for account and risk of the cargo . . . If circumstances beyond the control of the carrier make it impossible to place such cargo into Public Store or elsewhere at the end of said six day period the cargo will be subject to the following scale of demurrage charges . . . which shall be assessed on cargo remaining on the pier after the expiration of the six days free time: . . ."

The government contends that this provision required the defendant to charge demurrage for all cargo remaining at its terminal six days after discharge and that the defendant's failure to enforce this provision constituted a violation of the Act as a matter of law.

The defendant concedes that the conduct alleged, without more, would be violative of the Act. However, it claims that another provision of its tariff limited Item # 170 and that it had no legal right to impose demurrage charges during the period in question. Alternatively, it contends that the tariff was ambiguous and that it properly construed the tariff against itself by not charging demurrage. Finally, it argues that it never intended to deviate from its published tariff and that it never gave any shippers preferential treatment in the imposition of shipping charges.

■ Preliminarily, it might be observed that the federal courts have uniformly held that a carrier must charge the rate appearing in its filed tariff. See Dayton Coal & Iron Co. v. Cincinnati, New Orleans & Texas Pacific Ry., 239 U.S. 446, 36 S.Ct. 137, 60 L.Ed. 375 (1915); Louisville & Nashville Ry. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); Texas & Pacific Ry. v. Mugg & Dryden, 202 U.S. 242, 26 S. Ct. 628, 50 L.Ed. 1011 (1906). This rate must be charged and paid regardless of seemingly innocent justifications for departure such as mistake, inadvertence or contrary intention of the parties. Louisville & Nashville Ry. v. Maxwell, supra, 237 U.S. at 97, 35 S.Ct. 494; Southern Pacific Co. v. Miller Abattoir Co., 454 F.2d 357, 359–360 (3d Cir. 1972); United States v. Pan American Mail Lines, Inc., 359 F.Supp. 728 (S.D. N.Y.1972). Indeed, courts have consistently held that in an action predicated on a failure to comply with a published tariff the balance of equities between the parties is not even to be considered; the only question is whether there has been compliance with the filed tariff. United States v. Associated Air Transport, Inc., 275 F.2d 827, 832–834 (5th Cir. 1960); Armour & Co. v. Atchison, Topeka & Santa Fe Ry., 254 F.2d 719, 723–724 (7th Cir.), cert. denied, 358 U.S. 840, 79 S.Ct. 63, 3 L.Ed.2d 75 (1950); Bernstein Bros. Pipe & Machinery Co. v. Denver & Rio Grande Western R.R., 193 F.2d 441, 444 (10th Cir. 1951). Cf. Nyad Motor Freight, Inc. v. W. T. Grant Company, 350 F.Supp. 692 (S.D.N.Y. 1972).

The cases cited above clearly hold that noncompliance cannot be forgiven on the basis of the draftsman's intention and so it is not necessary to consider defendant's claim that its deviation was unintentional.

## II.

██ Defendant's other arguments, which are based on its interpretation of the tariff, are no more substantial. Basically, it contends that Item # 250 of the tariff, which is set out in the margin,[2] radically alters the legal significance of Item # 170. I have carefully considered the two provisions and find the defendant's tariff is ambiguous. This being the case, it may well be, as defendant contends, that it would have had difficulty collecting demurrage from its shippers. Indeed, the courts have consistently held that "[s]ince the tariff is written by the carrier, all ambiguities or reasonable doubts as to its meaning must be resolved against the carrier." See United States v. Interstate Commerce Commission, 91 U.S.App.D.C. 178, 198 F.2d 958, 966, cert. denied, 344 U.S. 893, 73 S.Ct. 212, 97 L.Ed. 691 (1952). See also Continental Can Co. v. United States, 272 F.2d 312, 315 (2d Cir. 1959); United States v. Pan American Mail Lines, Inc., supra. However, it does not follow that the defendant should escape civil liability. Congress sought to eliminate ambiguous tariffs through the tariff filing system. See United States v. Pan American Mail Lines, Inc., supra. The uncertainty they create makes them susceptible to collusive price fixing agreements and the granting of undue preferences.[3] To permit an ambiguous tariff to defeat a civil penalty action would in effect reward a

2. The relevant parts of Item # 250 read as follows:

"When prior arrangements have been made with the carrier, trailers may be removed from the terminals of the carrier by Consignee for unloading, subject to the following conditions and to all applicable terms and conditions of this Tariff:

1. Trailers may be removed from the terminals of the carrier by the consignee for unloading at consignee's expense and risk. Each trailer removed will be furnished with a chassis without additional charge by the carrier, but shipper shall furnish his own tractor. Consignee, in removing trailers and chassis from carrier's terminals shall execute carrier's receipt and agreement assuming full responsibility for the safety of trailers and chassis while in his possession and for safe return of trailers and chassis to the carrier's terminals from which they were removed in a clean and sound condition.

2. Free time for removal of trailers:

(a) When only one trailer arrives on a steamer, consignee will be allowed 48 hours free time to remove trailer after notification has been given that trailer is available for removal.

(b) When two or more trailers arrive on one steamer for the same consignee, additional free time for removal of trailers will be as follows:

| Number of Trailers | Additional Free Time |
|---|---|
| 2 to 4 | None |
| 5 to 8 | 48 hours |
| 9 or more | 72 hours |

Consignee must remove trailers each day, the number of which shall not be less than the equivalent of the total number of trailers divided by the number of days (24 hours each) of free time.

(c) If trailers are not removed within the free time specified in paragraph (a) and (b) above, carrier may, at its option, unload the trailers into its warehouse. If trailers are unloaded into carrier's warehouse, removal in carrier's trailers will not be available to consignee.

(d) Saturdays, Sundays and Holidays will be excluded in determining the free time under this item.

3. When trailers are removed from carrier's terminal for unloading, the following charges for each 24 hour day or fraction thereof, will be made for each trailer so removed:"

3. There is no evidence submitted nor required for the purposes of this motion, that Seatrain Lines intentionally utilized such a ploy to attract business. It is apparent however, that the practice of not collecting demurrage charges, as required by the carrier's tariff, could constitute a vehicle for the pursuit by unscrupulous carriers of the very activities Congress sought to eliminate through the tariff filing system.

carrier for failing to comply with its statutory requirements. I therefore conclude that the imposition of a civil penalty pursuant to Section 2 of the Act is indicated.

Seatrain has failed to make even a minimal showing that this case turns on an issue of fact which necessitates a trial. It has admitted that it failed to collect demurrage during the period in question. This conduct falls squarely within the proscription of the language and intent of § 2 of the Shipping Act. Under these circumstances, I find·as a matter of law that the defendant has failed to meet its obligation to collect the rates and charges specified in its tariff and that summary judgment is appropriate. Cf. Rawdon v. United States, 364 F.2d 803 (9th Cir. 1966); United States v. Hayes, 264 F.2d 929 (2d Cir. 1959); United States v. Mac-Mullen, 262 F.2d 499 (2d Cir. 1958); 6 Moore's Federal Practice ¶ 56.17[44.-1] (2d ed. 1971). Accordingly, plaintiff's motion for summary judgment is granted. The parties are directed to submit affidavits containing information relevant to the court's determination of the penalty to be assessed.

So ordered.