THE PEOPLE *ex rel.* PAUL HAAS, Treasurer and *ex officio* Collector of Taxes for St. Clair County, Applicant-Appellee, *v.* WALTER E. ACKER-MANN *et al.*, Objectors-Appellants.

Fifth District   No. 82—82

Opinion filed December 2, 1982.

Patrick M. Flynn, of Belleville, for appellants.

John Baricevic, State's Attorney, of Belleville (Jeffrey R. Glass, Assistant State's Attorney, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

This is an appeal from consolidated tax objections filed by various taxpayers in the circuit court of St. Clair County, in which the objectors challenged their 1979 real estate tax assessments. They alleged, *inter alia,* that the application of the equalization rate, or "multiplier," provided for in section 149 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 630) (hereinafter referred to as the Revenue Act), resulted in a fraudulent and excessive assessment of their property.

Applicant, the treasurer and *ex officio* collector of taxes for St. Clair County, moved for summary judgment on the ground that the objectors had failed to appeal their assessment to the Board of Review of St. Clair County, pursuant to section 107 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 588). Applicant argues that, as a consequence, the objectors have waived the right to object to the taxes.

The objectors concede that the assessment established by the local assessing officials is accurate but urge that the tax objection should be entertained as to that portion of the tax in excess of the assessment actually established before the board adjourned.

The trial court granted the applicant's motion for summary judgment and the objectors brought this appeal.

The sole issue presented for our consideration is whether the objectors' failure to seek a hearing before the St. Clair County Board of Review bars their suit in the circuit court. We hold that it does not.

The procedure for valuing real property in Illinois for tax purposes involves two steps. First, the local assessor values the real estate within the county. (See generally Ill. Rev. Stat. 1979, ch. 120, pars. 483 through 488.) This local assessment is subject to revision by either the county board of review or board of appeals, depending on which board is used in the particular county. (Ill. Rev. Stat. 1979, ch. 120, pars. 489 through 492, 588 through 606.) The second step in the valuation process is performed by the Department of Local Government Affairs (hereinafter referred to as Department), which, *inter alia,* performs the function of equalizing the valuation and assessment of property between the counties of the State. (Ill. Rev. Stat. 1979, ch. 120, par. 611(7).) The Department is authorized to act as an equalizing authority to lower or raise the total assessed value of property in the counties so that in counties throughout the State property will be assessed at the 33⅓% level specified by law. (Ill. Rev. Stat. 1979, ch. 120, pars. 627, 482(24).) The remaining portion of the equalization process has been summarized by the supreme court in *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 402-03, 328 N.E.2d 11, 13:

> "Notice of the Department's action is to be given by publication of the Department's estimates of full, fair cash value of locally assessed property within each county, and for a public hearing following which the Department may either confirm or revise its estimate. [Ill. Rev. Stat. 1973, ch. 120, par. 629a.] Thereafter, the Department is directed to equalize assessments of all property among the several counties as certified by the county clerks 'by adding to the aggregate assessed value

thereof in every county in which the Department may find the valuation to be less than [33⅓% of the] fair cash value, such rate per cent as will raise the same to [33⅓% of the] fair cash value *** and by deducting from the aggregate assessed value thereof, in every county or township in which the Department may find the valuation to be more than [33⅓% of the] fair cash value, such rate per cent as will reduce the same to [33⅓% of the] fair cash value.' [Ill. Rev. Stat. 1973, ch. 120, par. 630.] This equalization rate, which is more commonly referred to as the 'multiplier,' is then certified by the Department to the respective county clerks who extend taxes on the basis of the equalized assessed valuation resulting from application of the multiplier. [Ill. Rev. Stat. 1973, ch. 120, par. 632.]"

■ The objectors urge, as they did in the circuit court, that since the multiplier was not established until after the St. Clair County Board of Review had adjourned, it was impossible for them to seek relief from that body prior to seeking judicial relief. We agree. Our supreme court in *People ex rel. Isbell v. Albert* (1949), 403 Ill. 469, 479, 86 N.E.2d 237, 242, stated as dictum:

"If the application of the equalization factor *** resulted in a fraudulent or excessive assessment of a particular taxpayer's property, it is obvious that such individual taxpayer had no opportunity for relief from the board of review which had adjourned before the establishment of the equalization factor. An individual taxpayer could be heard on the question of an excessive or fraudulent character of his individual assessments by tax objection procedure in the county court, notwithstanding he had not complained to the Department of Revenue or to the board of review where there had been no opportunity to do so."

We adopt this dictum in *Isbell* as the rationale for our reversal of the judgment of the trial court in the case at bar.

We would further note that the county board of review operates to make adjustments regarding an individual's taxes only insofar as local assessments are concerned. (Ill. Rev. Stat. 1979, ch. 120, par. 589(4).) There is no statutory authority in the revenue code for the county boards of review to make adjustments in taxation after the application of the multiplier is determined by the Department. Thus, as the court in *Isbell* noted, review of the application of the equalization factor must rest with the judiciary.

■ We reject the applicant's suggestion that section 148a of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 629a) provides a pro-

cedure for taxpayers to have their tax objections concerning the multiplier established by the Department reviewed. While section 148a does provide a method for questioning the establishment of the multiplier itself, it does not offer a procedure whereby an individual taxpayer may obtain relief when the application of the multiplier results in a fraudulent or excessive assessment of his or her particular property. Indeed, the Department, by statute, has no authority "to review, revise, correct or change any individual assessment made by any local assessment officer." (Ill. Rev. Stat. 1979, ch. 120, par. 633.) The objectors, having alleged a fraudulent and excessive assessment due to the application of the multiplier, were entitled to a hearing on that claim.

Accordingly, the judgment of the circuit court of St. Clair County is reversed and the cause remanded.

Reversed and remanded.

HARRISON and WELCH, JJ., concur.