**INTERNATIONAL PAPER COMPANY, Plaintiff,**

v.

**TRANSPORTES NAVIEROS ECUATORIANOS, Defendant.**

**84 Civ. 4601 (RWS).**

United States District Court, S.D. New York.

Feb. 12, 1985.

Gilbride, Tusa, Mirone, Last & Spellane, New York City, for plaintiff; Robert C. Mirone, New York City, of counsel.

Nourse & Bowles, New York City, for defendant; John E. Bradley, New York City, of counsel.

## OPINION

SWEET, District Judge.

This is a motion for summary judgment brought by defendant Transportes Navieros Ecuatorianos ("Transportes") in an admiralty action filed by plaintiff International Paper Co. ("Paper"). The motion is granted, and the case is dismissed.

**Facts**

The facts necessary to resolve the motion are undisputed. Transportes is an ocean common carrier, serving ports on the United States' Atlantic and Gulf coasts and ports in Ecuador. At all times material to this action Transportes was a member of the United States Atlantic & Gulf/Ecuador Freight Conference (the "Conference"), an association of three ocean common carriers serving the same region. The Conference has published a freight tariff which sets forth the specific rates and charges to be applied by Conference members on various routes. The tariff is on file with the Federal Maritime Conference ("FMC").

On September 7, 1983, Edward Massoni ("Massoni"), an employee of Paper, placed an order with Hansen & Tidemann, Inc. ("H & T"), Transportes' agent, for the shipment of nine, 40' containers said to contain 360, 380 pounds of boxboard from New Orleans to Ecuador. Massoni alleges that H & T quoted a price of $80.00/short ton when the shipping order was placed and later confirmed that price. The containers were delivered to Transportes in New Orleans on September 19, and a bill of lading reflecting the delivery and a shipping rate of $156.00/short ton was issued by H & T, as agent for Transportes. On September 23, 1983, upon receiving the bill of lading reflecting the $156.00 rate, Massoni called H & T to clarify the discrepancy in rates. Massoni claims that an H & T employee acknowledged that the rate was $156.00/short ton, not $80.00/short ton as previously stated, and that on October 4, 1983, H & T advised Paper that a letter of correction would be sent. The $156.00 rate resulted in a bill of $28,109.64, while the $80.00 rate, applied without a minimum, would produce a bill of $14,415.20.

At all times relevant to this proceeding the tariff rate applicable to the goods shipped was controlled by the twelfth revision of page 128–I of the Conference Tariff ("Exhibit One"). The tariff was $156.00 for "Boxboard, in 40' carrier's containers," a tariff which was not subject to minimum revenue requirements. The tariff was $80.00 for "Boxboard, not corrugated," a tariff which was subject to minimum revenue requirements.

**Discussion**

Transportes charged based on a tariff of $156.00/short ton and was accordingly paid $28,109.64. Paper claims that the appropriate rate was $80.00/short ton and that it has paid excess charges of $13,694.44.

46 U.S.C. § 817(b)(1) (1984 Supp.) provides in relevant part as follows:

Every common carrier by water in foreign commerce and every conference of such carriers shall file with the [Federal Maritime] Commission and keep open to public inspection tariffs showing all the rates and charges of such carrier or conference of carriers for transportation to and from United States ports and foreign ports between all points on its own route and on any through route which has been established.

46 U.S.C.A. § 817(b)(3) provides that:

No common carrier by water in foreign commerce or conference of such carriers shall charge or demand or collect or receive a greater or less or different compensation for the transportation of property or for any service in connection therewith than the rates and charges which are specified in its tariffs on file with the [Federal Maritime] Commission and duly published and in effect at the time; nor shall any such carrier rebate,

refund, or remit in any manner or by any device any portion of the rates or charges so specified nor extend or deny to any person any privilege or facility, except in accordance with such tariffs....

As a means of enforcing the foregoing section, Congress provided for the assessment of stringent civil penalties for each violation of section 18(b)(3):

Whoever violates subsection (b)(3) hereof by means of rebates or refunds, shall be subject to a civil penalty of not more than $25,000 for each shipment on which a rebate or refund was paid and to suspension by the [Federal Maritime] Commission of any or all tariffs filed by or on behalf of such carrier, or suspension of the carrier's right to utilize any or all tariffs of conferences of which that carrier may be a member, for a period not to exceed twelve months."

46 U.S.C.A. § 817(b)(7) (1984 Supp.)

The statutory structure requires a carrier to charge the commodity rate appearing in its tariff or its conference tariff. The courts have held consistently that a carrier must charge the published tariff rate, and may not deviate from that rate due to mistake, inadvertence, or contrary intentions of the parties. *See Sea-Land Serv., Inc. v. American Intern. Movers,* 528 F.Supp. 224, 225–26 (W.D.Wash.1981) ("Despite America's insistence that some agent for Sea-Land quoted a rate less than that now demanded, the proof conclusively establishes that proper charges were made through a correct application of [the tariff]. The law is well-settled that a carrier must charge rates in accordance with filed tariffs, and that even a misquotation by the carrier or its agent of proposed shipment charges will not preclude later action for the proper freight charge, with is mandatory."); *United States v. Seatrain Lines, Inc.,* 370 F.Supp. 483, 484 (S.D.N.Y.1973)

("[The tariff] rate must be charged and paid regardless of seemingly innocent justifications for departure such as mistake, inadvertence or contrary intention of the parties ... [citations omitted]. Indeed, courts have consistently held that in an action predicated on a failure to comply with a published tariff the balance of equities between the parties is not even to be considered[.]") *See also, Louis & Nash. R.R. v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915).

▆▆▆▆ As a matter of law, consequently, a rate stated on the tariff must be charged. Paper's assertion that rates other than those stated on the tariff were quoted to Paper does not serve to limit Paper's liability for the full tariff rate. Paper's somewhat belated allegation of fraud is neither pled in the complaint nor substantiated with any facts.

The application of the tariff rates (Exhibit One) to the goods shipped requires a selection between the two boxboard rates. Because only the $156.00 rate is exempted from the minimum revenue requirements, Paper actually saved $13,965.36 by application of the higher per ton rate (Affidavit of John O'Neil). Only by application of the $80.00 per ton rate without the minimum revenue requirements would Paper save money and be able to recover. The $80.00 rate is not exempt from the minimum revenue requirements, however. Only a specific exemption in the tariff can eliminate the minimum requirements, and Paper's assertion that H & T had not made clear that a minimum revenue requirement applied to the $80.00 rate is unavailing. The stated tariff rate determines the proper charge.

**Conclusion**

The motion for summary judgment is granted, and the case is dismissed. The clerk is directed to enter judgment.

**IT IS SO ORDERED.**

EXHIBIT ONE

| UNITED STATES ATLANTIC & GULF/ ECUADOR FREIGHT CONFERENCE | | PAG. NO. 1 | ISSUE/REV 12th | PAGE 12B-I |
|---|---|---|---|---|
| | | | CANCELS 11th | PAGE 12B-I |

**E.S. AGE-1   FREIGHT TARIFF NO. 1**

FROM: UNITED STATES ATLANTIC PORTS (EASTPORT, ME TO AND INCLUDING BRUNSWICK, GA) AND U. S. GULF PORTS (MOBILE, AL TO AND INCLUDING BROWNSVILLE, TX)

TO: PORTS AND POINTS IN ECUADOR (AS LISTED IN RULE 1)

EFFECTIVE DATE July 26, 1983

CORR NO. 1005

### COMMODITY RATES

EXCEPT AS OTHERWISE PROVIDED HEREIN, RATES AND CHARGES ARE IN U.S. DOLLARS AND CENTS AND APPLY PER TON OF 2,000 LBS. (W) OR 40 CUBIC FEET (M), WHICHEVER PRODUCES THE GREATER REVENUE.

| COMM CODE | COMMODITY DESCRIPTION AND PACKAGING | RATE BASIS | RATE | ITEM |
|---|---|---|---|---|
| | PAPER ARTICLES, VIZ.: (Continued) | | | |
| | +Corrugated | W/M | $ 187.00 | |
| | +From Gulf Ports | W | 117.75 | |
| | Boxboard, in 40' carrier's containers not subject to minimum revenue requirements | W | 156.00 | |
| (D) (R)(D) | Boxboard, not corrugated | W | 80.00 | |
| | ++Tagboard, not corrugated, from Gulf Ports   ++ Through September 30, 1983 | W | 98.00 | |
| | Cartons, viz:   Milk, K.D., From Gulf Ports Only | W | 90.00 | |
| | Cartons, K.D. | W/M | 151.00 | |
| | +Cones or Tubes | W/M | 154.00 | |
| | +In Carrier's containers, minimum 2,300 cu.ft. per container | M | 105.00 | |
| | Containers, N.O.S. | W/M | 177.00 | |
| | Diapers | M | 194.00 | |
| | Labels | W/M | 219.00 | |
| | Linerboard, Not corrugated | W | 117.00 | |
| | *Linerboard, not corrugated from Gulf Ports Only   *Through September 30, 1983 12/31/83 | W | 80.00 | |
| | Linerboard, not corrugated, in minimum lots of 2,000 tons From Gulf Ports Only | W | 66.00 | |
| | Paperboard or Pulpboard, Polycoated or Plastic Coated, from Gulf Ports | W | 30.00 | |
| | ***Paperboard, Polycoated, in minimum lots of 50 tons per shipment   ***Through September 30, 1983 | W | 94.00 | |
| | Towels | W | 448.00 | |
| | **PARADICHLOROBENZENE   **Through September 30, 1983 | W/M W/M | 160.00 129.00 | |
| | PASTE | W/M | 216.00 | |
| | PEN PARTS | W/M | 229.00 | |

FOR EXPLANATION OF ABBREVIATIONS, REFERENCE MARKS AND SYMBOLS, SEE RULE 45.   DK1V/AC2590   ITS (202) 347-8770

(ITS)